UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BROWN, *et al*., | ) | CASE NO. 5:20-cv-02535 |
| | ) | |
| *On behalf of themselves and all others* | ) | JUDGE JOHN R. ADAMS |
| *similarly situated,* | ) | |
| | ) | **JOINT MOTION FOR** |
| Plaintiffs, | ) | **PRELIMINARY APPROVAL OF** |
| | ) | **CLASS ACTION SETTLEMENT** |
| *v.* | ) | |
| | ) | |
| SPEED NORTH AMERICA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiffs Michael Brown and Tomah Nelson (hereinafter also collectively referred to as "Plaintiffs") and Defendant Speed North America, Inc. (hereinafter also referred to as "Defendant" or "Speed NA") respectfully and jointly move the Court to (1) preliminarily approve the proposed settlement of Settlement Class Members' claims pursuant to Fed. R. Civ. P. 23(e), (2) approve a proposed notice to potential Settlement Class Members, (3) appoint proposed Class Counsel SCOTT & WINTERS LAW FIRM LLC as interim Class Counsel; and (4) schedule a Fairness Hearing. A Proposed Order Granting Preliminary Approval of Settlement is attached as Exhibit B. The Parties' Memorandum in Support is attached.

Respectfully submitted,

/s Ryan A. Winters
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs*

/s Kimberly L. Hall (via email consent)
Eric T. Michener (S.Ct. #0074559)
Kimberly L. Hall (S.Ct. #0090677)
CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD.
225 North Market Street; P.O. Box 599
Wooster, Ohio 44691
Phone: (330) 264-4444
Fax: (330) 263-9278
E-mail:  michener@ccj.com; khall@ccj.com

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................................. iii

Table of Authorities ............................................................................................................. v

Memorandum in Support ...................................................................................................... 1

I.      Introduction ................................................................................................................. 1

Ii.     The Litigation ............................................................................................................. 3

        A.      The Claims and Issues ................................................................................... 3

        B.      Investigation, Conditional Certification, Discovery, Document Analysis, and Research ........................................................................................................ 3

        C.      Settlement Negotiations ................................................................................. 6

III.    The Terms of the Settlement and Release of Claims .................................................. 6

        A.      The Scope of Settlement ................................................................................ 6

        B.      The Proposed Settlement Payments and Distributions .................................. 7

IV.    The Propriety of Approval ........................................................................................ 10

        A.      The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b) ........................................................................................... 10

        B.      The Proposed Settlement Qualifies for Preliminary Approval under Rule 23 ..... 13

                1.      Approval of the proposal under Civil Rule 23(e)(2) ................................. 15

                        a.      Adequacy of Representation by Class Counsel and Class Representatives – Rule 23(e)(2)(A) ............................................... 15

                        b.      Arm's Length Negotiation – Rule 23(e)(2)(B) ............................ 16

                        c.      The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i) .......................... 17

                        d.      The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii) ......... 17

                        e.      The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii) ........ 18

                        f.      The Relief is Adequate, Taking into Account Agreements

Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv) ................................................................ 23

g.  The Settlement treats class members equitably relative to each other – Rule 23(e)(2)(D) ............................................. 23

2.  Approval of the proposal under Civil Rule 23(e)(1)(B)(ii) ..................... 24

C.  The Service Award is Proper and Reasonable ....................................... 27

D.  The Proposed Notice Should Be Approved – Rule 23(c)(2)(B) ......................... 28

E.  The Court Should Appoint SCOTT & WINTERS LAW FIRM as Interim Class Counsel. ............................................................................ 30

V.  Conclusion ................................................................................ 30

Certificate of Service ........................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053 (Nov. 18, 2019) ........................................................................................ 27

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ......... 27

*Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474 (N.D. Ohio Oct. 17, 2018) .... 23

*Arlington Video Prods. v. Fifth Third Bancorp*, 515 F.App'x 426 (6th Cir.2013) ...................... 25

*Barnes v. Winking Lizard, Inc.*, N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657 (Mar. 26, 2019) ................................................................................................ 16, 21, 23

*Blasi v. United Debt Servs., LLC*, S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201 (Nov. 15, 2019) ........................................................................................ 26

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................... 19

*Brittmon v. Upreach LLC*, S.D.Ohio No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730 (Nov. 8, 2018) ................................................................................................ 21

*Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221 (July 27, 2018) ................................................................................................ 21

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08–CV–1119, 2011 WL 292008 (S.D.Ohio Jan.26, 2011) .............................................................................................. 20

*Cooper v. Winking Lizard, Inc.*, N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237 (Oct. 4, 2017) .............................................................................................. 11

*Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070 (Oct. 23, 2008) ............................................................................. 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ................. 28

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ............................................................... 19

*Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D.Ohio 2008) ........................................ 20

*Fitzgerald v. P.L. Marketing,* W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220 (July 2, 2020) ...................................................................................... 14

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887 (June 24, 2011) ................................................................................................ 11

*Glazer v. Whirlpool Corp.*, 678 F.3d 409 (6th Cir.2012) ...................................................... 13, 24

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) ......................................... 12

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) .................................................... 12, 16

*Hebert v. Chesapeake Operating, Inc.*, S.D.Ohio No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792 (Sep. 20, 2019) .................................................................................... 21

*Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275 (Oct. 26, 2016) .................................................................................... 11

*Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D.Cal. 2005)........................ 16

*Herrera v. Wells Fargo Bank, N.A.,* C.D.Cal. No. SACV 18-332JVS (MRWx), 2021 U.S. Dist. LEXIS 170195 (June 8, 2021) ........................................................................................ 15

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)........................................................ 16, 25

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ...................................... 12

*In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 29, 2019) ................................................................................................................................. 15

*In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347 (E.D.N.Y. 2000) ................................................. 16

*Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)................................................................................................................ 11

*Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650 (N.D.Ohio 2008) ........................................................................................................................................ 20

*Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D.Ohio Jan. 26, 2017).................................................................................................... 11, 14

*Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994 (S.D.Ohio May 30, 2012) ..................................................................................................................................... passim

*Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June 16, 2008) ........................................................................................................................................ 11

*Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D.Ohio 2010) ....................... 13, 20

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)................................ 11

*Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243 (Aug. 17, 2021) ...................................................................................................................... 21

*McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D.Ohio 2007) ................................. 20

*Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D.Ohio May 4, 2018).............................................................................................. 11, 21, 27

*Padovano v. FedEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092 (W.D.N.Y. June 10, 2019) .................................................................................................................................. 15

*Rawlings v. Prudential-Bache Properties*, 9 F.3d 513 (6th Cir.1993) ........................................ 20

*Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 (N.D. Ohio August 22, 2008) ................................................................................................ 12

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008)............................................................................. 19

*Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912(June 15, 2010) ............................................................................................... 18, 21, 27

*Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) ...................................................................................... 27

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584 (Mar. 13, 2017) ................................................................................................................ 11, 13

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) . 21, 22

*Steigerwald v. BHH, LLC*, 2016 U.S. Dist. LEXIS 21116 (N.D.Ohio Feb. 22, 2016) ................ 24

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450 (July 11, 2014) ...................................................................................................................................... 20

*Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) .......... 15

*Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391 (Sep. 12, 2007) . 26

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 (6th Cir.1984) ........................................... 19

*Wright v. Premier Courier, Inc.*, S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019 (Aug. 17, 2018) ........................................................................................................................ 21

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .................................. 16, 25, 27

**Statutes**

29 U.S.C. § 207 ....................................................................................................................... 3, 7

29 U.S.C. § 216 ..................................................................................................................... passim

O.R.C. § 4111.03 ...................................................................................................................... 1, 3

O.R.C. § 4111.10 ..................................................................................................................... 3, 19

O.R.C. §§ 4111.01 ....................................................................................................................... 25

**Other Authorities**

Manual for Complex Litigation at § 21.312 ............................................................................... 29

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. passim

## MEMORANDUM IN SUPPORT

## I.     INTRODUCTION

The Class/Collective Action Settlement Agreement ("Settlement" or "Settlement Agreement"), attached as Exhibit A, calls for an opt-out Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to overtime wage law claims. The Settlement will apply to Representative Plaintiffs Michael Brown and Tomah Nelson and to all other members of the proposed Settlement Class (collectively referred to as "Settlement Class" or "Class Members"). The Settlement Class consisting of all Rule 23 Class Members who do not exclude themselves from the Settlement includes:

> Plaintiffs, FLSA Collective Action Members, and all present and former hourly employees of Defendant Speed North America, Inc. during the period of November 10, 2018 to September 13, 2021 who do not exclude themselves from the Settlement pursuant to Paragraph 6 of this Agreement and who, during one or more workweeks when they worked more than forty (40) hours, were paid allegedly nondiscretionary bonuses including, but not limited to, in the form of shift differential, attendance, and "lead pay," that were not factored into their overtime pay; and/or who, during one or more workweeks when they worked more than forty (40) hours, were allegedly not paid for all hours worked by virtue of having their time edited or otherwise rounded or modified.

(*See* Settlement Agreement, Ex. A at 5.) In addition, this Settlement covers Plaintiffs' and FLSA Collective Action Members' federal law overtime claims, individuals who previously provided timely consent forms to become party opt-in Plaintiffs in this case ("FLSA Collective Action Members'"). (*Id.* at 3-5.)

The Settlement, achieved with the assistance of esteemed Mediator Jerome F. Weiss, resolves *bona fide* disputes involving overtime compensation under the FLSA and corresponding provisions of Ohio wage-and-hour law, O.R.C. § 4111.03. Plaintiffs alleged that they and other hourly employees of Speed NA are owed unpaid overtime compensation. (*See* ECF #25, Second

1

Amended Class and Collective Action Complaint ("Second Amended Complaint") at ¶¶ 16-36.) Defendant denied Plaintiffs' claims and asserted affirmative defenses. (*See* ECF #26, Def.'s Answer to Second Amended Complaint.)

The potential Class Members will receive notice of their right to participate in the settlement containing, among other pertinent information, the total number of workweeks worked by the potential Class Member during the covered period, the individual settlement payment amount, and the total amount of the settlement proceeds on a global basis. The settlement results in an average gross class recovery of approximately $404.90 per Member of the Settlement Class based on an estimated Settlement Class of 450 employees, including the 35 party opt-in Plaintiffs who previously provided timely consent forms to become party opt-in Plaintiffs in this case pursuant to the FLSA. Each potential Class Member will receive notice so that all potential Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendant.

The case was hotly contested and settlement was achieved only through difficult negotiations, data production and comprehensive analysis of relevant records, and a full day mediation with esteemed Mediator Jerome F. Weiss. The Settlement is fair, reasonable, and adequate and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b), and Rule 23(e). If approved by the Court, the Settlement will provide individual settlement payments to Class Members representing a substantial percentage of their claimed damages.

The following settlement documents and proposed order are submitted for approval or entry by the Court:

Exhibit A:          Class/Collective Action Settlement Agreement
                    ("Settlement Agreement");

Exhibit B:           Proposed Order Granting Preliminary Approval of
                     Settlement ("Preliminary Approval Order," providing for
                     notice and hearing);

Exhibit C:           Proposed Notice of Class Action Settlement and Fairness
                     Hearing; and

Exhibit D:           Declaration of Plaintiffs' / Proposed Class Counsel
                     (hereinafter "Class Counsel").

The sections below explain the litigation, the negotiations, the Settlement terms, the
proposed settlement payments and distributions, and the propriety of approval.

## II.    THE LITIGATION

### A.     The Claims and Issues

Plaintiff Michael Brown filed his Class and Collective Action Complaint on November
10, 2020 (ECF #1), and on May 21, 2021 Plaintiffs Brown and Tomah Nelson filed a Second
Amended Class and Collective Action Complaint (ECF #25). Plaintiffs alleged that they and
other similarly situated employees were not paid for all time worked, including compensable
time at the beginning and end of their shifts as a result of Defendant's alleged unlawful regular
rate calculation and time editing and rounding policies, and are owed overtime compensation,
liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio
Revised Code §§ 4111.03, 4111.10. (*See* ECF #25, Second Amended Complaint at ¶¶ 16-36.)
Defendant denied Plaintiffs' claims and asserted affirmative defenses. (*See* ECF #26, Answer to
Second Amended Complaint.)

### B.     Investigation, Conditional Certification, Discovery, Document Analysis, and Research

Following the Case Management Conference on January 25, 2021 (*see* ECF #11), on
February 25, 2021 Plaintiffs filed their unopposed motion for leave to file their First Amended
Class and Collective Action Complaint, which added Tomah Nelson as an additional Named

3

Plaintiff and added additional FLSA Collective and Fed. R. Civ. P. 23 allegations pertaining to Defendant's alleged time editing practices (ECF ##12, 12-1). Magistrate Judge Kathleen B. Burke granted Plaintiffs' motion on February 26, 2021 (*see* February 26, 2021 Order [non-document]), and Defendant filed its Answer to Plaintiffs' First Amended Complaint on March 12, 2021 (ECF #14).

On March 19, 2021, the Parties filed their Joint Motion and Stipulation of Conditional Certification pursuant to Section 216(b) of the FLSA, which provided for a 60-day period for individuals to return their consent forms to join the case from the date the notice and consent form were sent. (ECF ##15, 15-1, 15-2, 15-3.) Magistrate Judge Kathleen B. Burke granted conditional certification and approved the proposed notice and consent documents on March 24, 2021. (ECF ##16, 16-1, 16-2, 16-3.) Pursuant to the Court's March 24 Order, the Parties notified the Court that the initial regular mailing of notice to potential opt-in plaintiffs occurred on April 21, 2021, and the opt-in period closed on June 20, 2021, 60 days after the initial mailing. (ECF #17.)  During the opt-in period, in addition to the two Named Plaintiffs who previously filed consent forms in accordance with federal law, 35 additional individuals joined the matter as party opt-in Plaintiffs pursuant to the FLSA, 29 U.S.C. § 216(b).[1] Class Counsel timely filed consent forms as received. (*See docket.*)

On June 29, 2021, the Parties participated in a telephonic conference before Magistrate Judge Kathleen B. Burke. (ECF #33.) As noted in the Court's Minutes of Proceeding and Order

---

[1] The opt-in collective consists of Speed NA current/former employees (including the Named Plaintiffs) Arnold, Cindy; Briggs, Andrew; Brown, Mike; Dalphin, Sara; Dalton, Kenneth; Deavens, Demarius; Dehart, Glen; Durtschi, Samantha; Finley, Trinette; Gentry, Chantel; Haskins, Marcus; Hayhurst, Jeremy; Higdon, William; Houk, Clinton; Howell, Thomas; Jackson, DeMarco; Jackson, Kevin; Kash, Amy; Knight, Brad; Lilley, Katie; Myers, Devlin; Neal, Johnny; Nelson, Tomah; Nicely, Brittany; Nicely, Shelly; Price, Chris; Price, Simone; Robinson, Alvin; Robinson, Jordan; Robinson, Thomas; Shields, Thomas; Smalls, Brian; Stanley, Hunter; Strait Jr., Danny; Templeman, Ryan; Tope, Wayne; and Woodruff, Robert

issued following the conference, "counsel for the parties informed the Court that, following an informal exchange of information, e.g., payroll records and editing information, the parties intend to proceed with a private mediation." (*Id.*)

On July 7, 2021 Class Counsel issued informal mediation discovery requests, and on July 16, 2021 Defendant issued Defendant's informal discovery requests. Ultimately, in response, Defendant produced approximately 1175 pages of PDF documents and Microsoft Excel compatible spreadsheets containing job identification and payment information comprised of a combined approximately 300,000 data points, including payroll information for approximately 458 employees (100%), and timekeeping records for approximately 36 employees (8%). Class Counsel both manually and electronically transcribed all relevant provided data into an electronic, aggregate computable format. Plaintiffs' computation permitted a calculation of the unpaid wages for the Plaintiffs and all other members of the proposed Settlement Class based off a statistically significant sample of the total workweeks over a two-year period (as to the Rule 23 Class) and a three-year period (as to the FLSA Collective). In advance of the mediation, Plaintiffs provided a comprehensive mediation position statement and settlement demand which was provided to both defense counsel and the mediator. As directed by the Court, on August 27, 2021, the Parties filed a joint status report informing the Court of the name of the mediator selected by the Parties (Jerome F. Weiss, *Esq.*) and the agreed upon date for conducting the mediation. (ECF #34.) In addition, on September 10, 2021, Class Counsel provided responses to the informal discovery requests submitted by Defendant for mediation purposes.

As above, the Parties engaged in comprehensive discovery and wage and hour records analysis regarding the Plaintiffs' claims and the Defendant's defenses to these claims. Class Counsel also conducted extensive investigations into the facts before and during the prosecution

of the Action. This discovery and investigation has included, among other things, (a) multiple meetings and conferences with the Court, Plaintiffs, and Defendant's Counsel; (b) inspection and analysis of class-wide documents produced by the Defendant, including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology comprising of over 300,000 data points from the records produced by Defendant; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of class treatment and collective action treatment; (e) analysis of potential class-wide damages; (f) research of the applicable law with respect to the claims and potential defenses thereto; and (g) serving and working on responding to discovery requests.

Plaintiffs have vigorously prosecuted this case, and Defendant has vigorously defended it. The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims and of Defendant's defenses to these claims.

### C. Settlement Negotiations

Settlement negotiations were arduous and contentious. In advance of the mediation, Plaintiffs prepared and submitted a comprehensive mediation position statement and demand addressing merits and damages issues. A full day mediation with esteemed Mediator Jerome F. Weiss, a very seasoned and experienced attorney and mediator, on September 13, 2021 was successful in achieving a settlement. Subsequent to the mediation, the Parties drafted settlement documents for filing with the Court, including the Class/Collective Action Settlement Agreement (Ex. A).

### III. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve disputed claims between the Parties. The Settlement will resolve Ohio wage-and-hour claims of the Named Plaintiffs and all other members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(e). In addition, the Settlement will resolve federal claims of the Named Plaintiffs and other FLSA Collective Action Members pursuant to the FLSA, 29 U.S.C. §§ 207, 216(b). As highlighted below, Class Counsel and Defense Counsel believe that certification and Settlement are appropriate because the released claims are being compromised without need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Class/Collective Action Members in light of the procedural and substantive encumbrances underscored by Defendant. Named Plaintiffs and Class Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and Class Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Class/Collective Members.

### B.     **The Proposed Settlement Payments and Distributions**

**Total Settlement Amount.** Defendant has agreed to pay the total settlement amount of $311,500.00 as set forth in the Settlement Agreement. (Ex. A at 3, 6.) That sum will be used to make settlement payments to the Plaintiffs and other members of the proposed Settlement Class which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiffs, FLSA Collective Action Members and other Rule 23 Class Members; (2) attorneys' fees and reimbursed litigation expenses; (3) costs of administration; (4) service awards to the Named Plaintiffs; and (5) any other obligations of Defendant under the Settlement Agreement.

**Payments to Settlement Class Members.** From the total settlement amount, $182,205.00 shall be allocated to the Class/Collective Members[2] resulting in an approximate average gross recovery of approximately $404.90 per Class Member based on an estimated total settlement class of approximately 450 employees. The proposed method of allocating the class payments is reasonable and fair to all. Payments to Class Members are based proportionally on each Class Member's respective weeks of service to Defendant Speed NA from November 10, 2018 to September 13, 2021. (*See* Ex. A at 4-6.) In addition, FLSA Collective Action Members (who are also Rule 23 Class Members) will receive a 2x multiplier as compensation for their liquidated damages in addition to a third year of recovery (to the extent applicable), each of which is only available under federal law, 29 U.S.C. § 216(b). (*See id*.) The Parties will submit a proposed Individual Settlement Allocation Schedule after the period for requesting exclusion pursuant to Rule 23 has expired.

Based on an average constant workforce of 102 employees at an average hourly regular rate of $15.36, the Settlement will provide each worker, after deduction of attorneys' fees and expenses, with an approximate additional 9.8 minutes of pay per day worked over the three-year period based on a 5-day workweek (excluding federal holidays).[3] Based on the Settlement

---

[2] The Settlement Agreement defines the makeup of the Rule 23 Class as "Plaintiffs, FLSA Collective Action Members, and all present and former hourly employees of Defendant Speed North America, Inc. during the period of November 10, 2018 to September 13, 2021 who do not exclude themselves from the Settlement..." The data Defendant produced in discovery included approximately 380 employees from November 14, 2018 until December 23, 2020. As provided in the Settlement Agreement (Ex. A at 7, ¶ 5), Defense Counsel will provide updated payroll/timekeeping data sufficient to enable Class Counsel to determine each Class/Collective Member's Settlement Share 14 calendar days after preliminary approval is issued, including an updated list of each Rule 23 Class Member's (that is not also an FLSA Collective Action Member) weeks of employment from November 10, 2018 to September 13, 2021, and an updated list of each FLSA Collective Action Member's weeks of employment from November 10, 2017 to September 13, 2021. The final Individual Settlement Allocation Schedule will provide the court with final data that does not entail any speculation.

[3] The Parties deeply disputed the average or approximate number of minutes, if any, Defendant's employees worked either off the clock or worked after clocking in but prior to their shift starting time. From Defendant's perspective, employees generally performed no job duties and engaged in no

8

amount for the Class and an average hourly rate of $15.36, Class Members will receive approximately 98% of their alleged wage damages were they to have worked an additional 10 minutes per day off the clock, or 65% of their alleged wage damages were they to have worked an additional 15 minutes per day off the clock. Inherent in the proposed distribution method in which Class Members are distributed settlement payments based proportionally on each Class Member's respective weeks of service to Defendant Speed NA during the relevant period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Plaintiffs and FLSA Collective Action Members, as also members of the Settlement Class, will participate in this recovery under the same procedure applicable to other Class Members with an additional multiplier as compensation for their liquidated damages in addition to a third year of recovery. Importantly, this is not a "claims-made" settlement. All potential Class Members who do not exclude themselves from the settlement will receive a settlement check.

**Service Awards.** The proposed Settlement provides for a service award to each of the Named Plaintiffs Michael Brown and Tomah Nelson in the amount of $2,000 each in recognition of their assistance to Class Counsel and their contribution to achieving the Settlement on behalf of all Class Members. The proposed service awards are well-earned. Among other things, each of the Plaintiffs Michael Brown and Tomah Nelson consulted with Class Counsel at critical stages and provided important and necessary documents and information throughout the course of the litigation. Their contributions were instrumental in enabling Class Counsel to negotiate the proposed Settlement.

---

compensable, non-de minimis activities prior to their shift starting time. From Plaintiffs' perspective, employees would generally clock in 10 to 15 minutes early and begin working, and their hours would be either rounded or edited against them resulting in non-payment of compensable time worked.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Class Counsel will receive attorneys' fees and costs in the total amount of $102,795.00. After reductions for litigation expenses in the total estimated amount of $1,507.29, the attorney fee recovery will equal $101,287.71, or approximately 32.52% of the $311,500.00 settlement fund. (*See* Ex. D, Declaration of Counsel at ¶ 35.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' / Proposed Class Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* Ex. A at 8-10, ¶¶ 8-9.)

**Plaintiff Brown's Retaliation Claim.** The Parties' September 13, 2021 mediation also resolved Plaintiff Michael Brown's individual retaliation claim. Throughout the mediation, Class Counsel insisted on negotiating Plaintiff Brown's retaliation claim separately from negotiation of the wage-and-hour settlement reached for Class/Collective Action members. As consideration for the agreed-upon amount received for resolving his retaliation claim consisting of back wages, liquidated damages, and a proportional attorney fee pertaining to the retaliation claim, Plaintiff Brown agrees to execute a Confidential Settlement and General Release Agreement.

**Costs of Administration.** From the Total Settlement Amount, Settlement Administrator Settlement Services Inc. will receive $22,500.00 to administer the settlement.

## IV. THE PROPRIETY OF APPROVAL

### A. The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b)

This settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b), as to the Plaintiffs and other FLSA Collective Action Members. Most courts approve FLSA settlements in a single step. In an FLSA settlement, the Court must ensure "there is a bona fide

10

dispute between the parties as to the employer's liability under the FLSA" and that the proposed

settlement "is fair, reasonable, and adequate." *Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-

00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v.*

*Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D.Ohio May 30, 2012)); *Osman*

*v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2

(N.D.Ohio May 4, 2018). *Accord Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S.

Dist. LEXIS 51544, at *2, fn. 1 (June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United*

*States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)).

        In *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist.

LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Crawford v. Lexington-Fayette Urban Cty. Govt*.,

E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *3 (Oct. 23, 2008); *Int'l Union,*

*United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th

Cir. 2007) (further citation omitted)), a court within this district and division used seven factors

to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA,

29 U.S.C. 216(b): "the risk of fraud or collusion, the complexity, expense, and likely duration of

the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and

the public interest in settlement." *See also Cooper v. Winking Lizard, Inc.,* N.D.Ohio No.

1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017); *Hedglin v. Maxim Healthcare*

*Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275, at *3-4 (Oct. 26, 2016).

"The court may choose to consider only those factors that are relevant to the settlement at hand

and may weigh particular factors according to the demands of the case." *Cooper*, 2017 U.S. Dist.

LEXIS 169237, at *5 (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011

U.S. Dist. LEXIS 67887, at *3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at

*13-14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008); citing *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating wage and hour claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant vehemently denies, but also each employees' damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered workers performed pre-shift compensable work each day, in addition to the amounts of these times. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the covered employees will receive significant compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the covered employees is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs and opt-ins in this action.

The other six factors are satisfied as well. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation strongly favor approval. Moreover, given the factual and legal complexity of the issues in this case, there is no guarantee that the employees will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the covered employees will

12

receive significant compensation. Given the uncertainties surrounding a possible trial in this matter and potential appeals, the certainty and finality of a settlement that will substantially benefit the Plaintiffs and other covered employees is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation"). Class Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The Parties engaged in discovery, substantial document review, comprehensive data analysis, due diligence prior to arduous negotiations, mediation before a mediator known for his extensive experience and expertise in resolving large-scale wage and hour cases, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *5. Counsel on both sides support the Settlement, as do the Named Plaintiffs themselves. (*See* Exs. A, D.)

### B.     The Proposed Settlement Qualifies for Preliminary Approval under Rule 23

"Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 782 (N.D.Ohio 2010). Amended Fed. R. Civ. P. 23 requires a two-fold determination for preliminary approval of the class action. Rule 23 authorizes the Court to certify the Settlement Class if it satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Glazer v. Whirlpool Corp*., 678 F.3d 409, 416 (6th Cir.2012). Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and only on finding that it is fair, reasonable,

and adequate…" *See, e.g., Jackson,* 2017 U.S. Dist. LEXIS 193782, at *4, 6 (scheduling a

fairness hearing and granting preliminary approval of a class settlement upon the ground that it

was "'fair, reasonable, and adequate' to all participants").

Rule 23(e), modified effective December 1, 2018, explicitly addresses preliminary

approval. The Rule now provides:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or
> defenses of a certified class—or a class proposed to be certified for purposes
> of settlement—may be settled, voluntarily dismissed, or compromised only
> with the court's approval. The following procedures apply to a proposed
> settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class.*
>
> > (A) *Information That Parties Must Provide to the Court.* The parties must
> > provide the court with information sufficient to enable it to determine
> > whether to give notice of the proposal to the class.
> >
> > (B) *Grounds for a Decision to Give Notice.* The court must direct notice in
> > a reasonable manner to all class members who would be bound by the
> > proposal if giving notice is justified by the parties' showing that the court
> > will likely be able to: (i) approve the proposal under Rule 23(e)(2); and
> > (ii) certify the class for purposes of judgment on the proposal.

As above, the Court must address two questions at the preliminary approval stage: (i)

whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)"; and (ii) whether

it "will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.*

Courts have treated the amended standard as superseding the varying "preliminary approval"

standards that courts had developed based on decisional law. *See Fitzgerald v. P.L. Marketing,*

W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220, at *12, fn. 1 (July 2,

2020) ("Rule 23(e) was substantially amended to provide an enumerated 'shorter list of core

concerns' for courts to focus on when evaluating whether a proposed class action settlement is

fair.") (citing *see* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes); *Herrera v. Wells*

14

*Fargo Bank, N.A.,* C.D.Cal. No. SACV 18-332JVS(MRWx), 2021 U.S. Dist. LEXIS 170195, at *21 (June 8, 2021); *Padovano v. FedeEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092, *6-7 (W.D.N.Y. June 10, 2019); *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, *14-16 (N.D. Cal. Mar. 29, 2019); *Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458, *13-15 (S.D. Iowa Feb. 14, 2019).

The proposed Settlement satisfies the above prerequisites and standards, as shown below.

### 1. Approval of the proposal under Civil Rule 23(e)(2)

When evaluating whether the Court *will likely be able to* "approve the proposal under Rule 23(e)(2)," the court applies amended Rule 23(e)(2)'s approval factors. Rule 23(e) states:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;
> >
> > (C) the relief provided for the class is adequate, taking into account:
> >
> > > (i) the costs, risks, and delay of trial and appeal;
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.

These factors are addressed in turn.

### a. Adequacy of Representation by Class Counsel and Class Representatives – Rule 23(e)(2)(A)

Plaintiffs Michael Brown and Tomah Nelson have aggressively pursued the interests of Class Members in this case, and their counsel have extensive experience in class action litigation

including wage-and-hour cases. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)). As explained above, class representatives and Named Plaintiffs Michael Brown and Tomah Nelson, and Class Counsel have adequately represented the class, including but not limited to engaging in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and achieved an exceptional result for Class Members. (*See* Ex. D, Declaration of Counsel at ¶¶ 18-26.)

### b. Arm's Length Negotiation – Rule 23(e)(2)(B)

Advisory Committee Notes provide that this factor considers whether negotiations "were conducted in a manner that would protect and further the class interests." "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D.Ohio 2007) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D.Cal. 2005); *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000)); *accord Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *6 (Mar. 26, 2019).

The settlement here was reached as a result of arm's length negotiation through the assistance of Jerome F. Weiss, a very seasoned and experienced attorney and mediator[4] who has mediated complex wage and hour cases. The Parties engaged in extensive document discovery and tedious analyses of damages-related documents and data. The Parties were represented by

---

[4] https://www.mediate.com/mediationinc/pg2.cfm

law firms with extensive litigation and wage and hour experience. Class Counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's length and is one that is fair and reasonable to Class Members. This factor is likely to be satisfied.

### c. The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i)

Advisory Committee Notes note that "[a]nother central concern will relate to the cost and risk involved in pursuing a litigated outcome." Here, the court may consider "the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

This factor is likely to be satisfied. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs and all other Class Members. There is no guarantee that Plaintiffs will prevail at trial and the litigation could be long, immensely costly, and protracted. The Parties will likely complete numerous depositions and engage economic and accounting experts in preparation for trial and testimony. In contrast, the Settlement assures that the Plaintiffs and all other Class Members will receive significant compensation with little delay in the face of substantial risk and costs commensurate with further prolonged litigation.

### d. The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii)

Here, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied. First, Class Members are required to do nothing to participate in the settlement – no claim forms or other

documents are required to be completed and submitted to participate in the Class recovery – participation is automatic.

Second, the settlement achieves an excellent result for Class Members. The settlement results in an average payout of $404.90 per Member of the Settlement Class based on a Settlement Class estimated to consist of approximately 450 employees. Based on a constant workforce of approximately 102 employees at an average hourly regular rate of $15.36, the Settlement will provide each worker, *after deduction of attorneys' fees and expenses*, with an approximate additional 9.8 minutes of pay per day worked over the three-year period based on a 5-day workweek (excluding federal holidays). This amount represents approximately 98% of their alleged wage damages were employees to have worked an additional 10 minutes per day off the clock, or 65% were they to have worked an additional 15 minutes per day off the clock.

The recovery for the covered employees is greater than the payments equating to several minute payouts in certain other Ohio lawsuits in which other workers sought payment for pre- and/or post-shift activities. For example, in *Kritzer*, Judge Gregory L. Frost approved a settlement in which employees' payments equated to 4 minutes of unpaid wages per day. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *7. Similarly, in *Rotuna*, Judge Sara Lioi approved a settlement in which class members recovered 25% of the damages they would have recovered by proving 8 minutes of unpaid wages per day. *Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *21 (June 15, 2010).

### e. The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii)

As to this factor, Advisory Committee Notes provide that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be

paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* Ex. A at 7-9, ¶¶ 8-9.) The total combined attorneys' fees and litigation expenses of $102,795.00 represent 33% of the $311,500.00 settlement fund and will be paid at the same time as the employee payments. After reductions for litigation costs and expenses, however, the attorneys' fee recovery will equal $101,287.71, or approximately 32.52% of the $311,500.00 settlement fund.  (*See* Ex. D, Declaration of Counsel at ¶ 35.)

Moreover, the FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10.

The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

In the present case, based on an average constant workforce of approximately 102 employees, the efforts of Class Counsel resulted in proposed settlement payments to Class Members representing approximately 98% of their alleged wage damages were they to have

worked an additional 10 minutes per day off the clock, or 65% of their alleged wage damages were they to have worked an additional 15 minutes per day off the clock. Based on an average constant workforce of 102 employees at an average hourly regular rate of $15.36, the Settlement will provide each worker, *after deduction of attorneys' fees and expenses*, with an approximate additional 9.8 minutes of pay per day worked over the three-year period based on a 5-day workweek (excluding federal holidays). The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Class Counsel, attached as Exhibit D.

"In this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'" *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *14-15 (July 11, 2014) (citing *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08–CV–1119, 2011 WL 292008, at *13 (S.D.Ohio Jan.26, 2011)); *Lonardo*, 706 F. Supp. 2d at 790 (percentage-of-fund is "preferred method"). Another court within this district has noted that "[t]he percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel 'as to their expected recovery,' and encourag[es] early settlement before substantial fees and expenses have accumulated." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-21 (citing *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir.1993); *Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650 (N.D.Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D.Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D.Ohio 2007)).

Applying *Fegley* and *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 515 (6th Cir.1993), courts in the Sixth Circuit commonly approve one-third fee awards in wage-and-hour actions, including Rule 23 overtime cases. *Wright v. Premier Courier, Inc*., S.D.Ohio No. 2:16-

20

cv-420, 2018 U.S. Dist. LEXIS 140019, at *18-19 (Aug. 17, 2018) (approving one-third attorney fee award and noting "the hours expended and time records submitted by Class Counsel [including Scott & Winters] further underscore their competency and efficient handling of this matter, favoring approval."); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (approving one-third of the common fund as attorneys' fees) (additional citations omitted)); *Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243, at *11-12 (Aug. 17, 2021) (approving request for attorneys' fees in the amount of one-third of the settlement fund and noting that "Plaintiff's counsel [Scott & Winters] brings substantial collective experience in litigating claims under [the] FLSA. [] Counsel zealously advocated for the Opt-In Plaintiffs' interests throughout the entirety of this litigation."); *Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *2, 9-13 (July 27, 2018) (Gwin, J.) (FLSA collective matter involving 1,869 opt-ins where the court decreased counsel's request of 40% of the fund to one-third); *Hebert v. Chesapeake Operating, Inc.*, S.D.Ohio No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *21-22 (Sep. 20, 2019) (Morrison, J.) (declining a requested fee award of 40% of the common fund involving not more than 400 class members; subsequently approving 33% of the common fund or $2,821,500; *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 (Mar. 26, 2019) (Gaughan, J.) (approving 33 1/3% fee award), *and Brittmon v. Upreach LLC*, S.D.Ohio No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730, at *3 (Nov. 8, 2018) (approving 40% of the overall settlement for attorney's fees).

Courts reference the NERA study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-

20 (citing study conducted by the National Economic Research Assocs.). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12), although the average result achieved for class members is generally only 7% to 11% of the claimed damages, *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *20 (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). Measured by the NERA benchmarks, the proposed Settlement in the present case is exemplary. Class Counsel have actively, aggressively, and efficiently litigated this case against the formidable defense mounted by Defendant. Counsel's efforts included extensive document discovery and tedious analyses of 1175 pages of PDF documents and Microsoft Excel compatible spreadsheets containing job identification and payment information comprised of a combined approximately 300,000 data points. The attorneys' fees and litigation expenses in the cumulative amount of $102,795.00 represents 33% of the $311,500.00 settlement fund and will be paid at the same time as the employee payments. After reductions for litigation expenses in the total estimated amount of $1,507.29, the attorney fee recovery will equal $101,287.71, or approximately 32.52% of the $311,500.00 settlement fund.  (*See* Ex. D, Declaration of Counsel at ¶ 35.)

The resulting settlement negotiated by Class Counsel ensures substantial payments to the Plaintiffs and other Class Members. Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Class Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. Furthermore, as provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel are not to be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments

disbursed to Plaintiffs and other Class Members, and the service award to Named Plaintiffs. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

At the final approval stage, after additional substantial additional work to be completed by Class Counsel, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees under the Sixth Circuit's "Ramey" factors. *See, e.g., Arledge v. Domino's Pizza, Inc*., 2018 U.S. Dist. LEXIS 179474, *8-15 (N.D. Ohio Oct. 17, 2018). In the meantime, it is likely that the amount and timing of the proposed attorneys' fees will support final approval because attorney fee recoveries in class and collective actions representing 33% of the common fund generally fall within the acceptable range. *See e.g., Barnes*, 2019 U.S. Dist. LEXIS 65657, at *17 (citing cases).

### f.  The Relief is Adequate, Taking into Account Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv)

Rule 23(e)(3) requires the Parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the executed Settlement Agreement (Ex. A) filed with this motion is the only Settlement Class related agreement connected to this class action settlement. In addition, the Parties' September 13, 2021 mediation also resolved Plaintiff Michael Brown's individual retaliation claim. Throughout the mediation, Class Counsel insisted on negotiating Plaintiff Brown's retaliation claim separately from negotiation of the wage-and-hour settlement reached for Class/Collective Action members. As consideration for the agreed-upon amount received for resolving his retaliation claim consisting of back wages, liquidated damages, and a proportional attorney fee pertaining to the retaliation claim, Plaintiff Brown agrees to execute a Confidential Settlement and General Release Agreement. This factor is also likely to be satisfied.

### g.  The Settlement treats class members equitably relative to each other – Rule 23(e)(2)(D)

23

Advisory Committee Notes comment that the amended Rule prohibits "inequitable treatment of some class members vis-a-vis others." Inherent in the proposed distribution method in which Class Members are distributed settlement payments based on respective weeks of service to Defendant Speed NA during the settlement period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). This distribution method, based on each Class Member's periods of employment, is eminently the most equitable proposed method of distributing relief to the class.

### 2.    Approval of the proposal under Civil Rule 23(e)(1)(B)(ii)

Now that the Parties have shown that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second consideration under Rule 23(e)(1)(B): whether the court "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Certification of the proposed Settlement Class will enable the Parties to resolve the claims of Plaintiffs and all other Class Members. Rule 23 authorizes the Court to certify a class that satisfies the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Whirlpool Corp,* 678 F.3d at 416. Furthermore, "courts in this Circuit have recognized that ascertainability of class members is an implied prerequisite of Rule 23." *Steigerwald v. BHH, LLC*, 2016 U.S. Dist. LEXIS 21116, *8 (N.D.Ohio Feb. 22, 2016) (citations omitted).

**Numerosity.** The proposed Settlement Class consists of approximately 450 employees of Defendant. Numerosity is met.

**Commonality and typicality.** By definition, the Rule 23 Settlement Class consists of Plaintiffs, FLSA Collective Action Members, and all present and former hourly employees of Defendant Speed North America, Inc. during the period of November 10, 2018 to September 13,

24

2021 [who do not exclude themselves from the Settlement] who, during one or more workweeks when they worked more than forty (40) hours, were paid allegedly nondiscretionary bonuses including, but not limited to, in the form of shift differential, attendance, and "lead pay," that were not factored into their overtime pay; and/or who, during one or more workweeks when they worked more than forty (40) hours, were allegedly not paid for all hours worked by virtue of having their time edited or otherwise rounded or modified. (Ex. A at 5.) Plaintiffs allege that Defendant owes additional compensation to these persons pursuant to the FLSA and Ohio wage-and-hour statutes, O.R.C. §§ 4111.01, *et seq.* (*See generally* ECF #25, Second Amended Complaint.) All members of the Settlement Class, including Plaintiffs Michael Brown and Tomah Nelson, have these claims, and adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit..." *Arlington Video Prods. v. Fifth Third Bancorp,* 515 F.App'x 426, 441 (6th Cir.2013). Plaintiffs' claims as to Defendant's alleged practices are the type of across-the-board practices that establish commonality.

      **<u>Adequacy of Representation.</u>** As above, Plaintiffs Michael Brown and Tomah Nelson have aggressively pursued the interests of Class Members in this case, and Class Counsel have extensive experience in class action litigation including wage-and-hour cases. *Young*, 693 F.3d at 543 (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)). As explained above, the class representatives and Class Counsel have adequately represented the class, achieving an exceptional result for Class Members. Fed. R. Civ. P. 23(e)(2)(A). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20.

**Predominance.** Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Whether Plaintiffs and other Class Members should have been paid additional overtime compensation was the common issue in this litigation, and this issue is the primary issue driving the proposed Settlement. Common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** Rule 23(b)(3) requires class litigation to be "superior to other available methods for fairly and efficiently adjudicating the controversy," and describes four factors that are "pertinent" to this superiority requirement. The present case is precisely the type of case in which class litigation is the superior method of adjudication.

Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This factor requires the Court to consider whether "Settlement Class Members have any interest in maintaining this litigation as separate actions." *Blasi v. United Debt Servs., LLC*, S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201, at *15 (Nov. 15, 2019). Here, there is no evidence that this is the case. As here, "the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers." *Id.* (citing *Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *26 (Sep. 12, 2007).

Rule 23(b)(3)(B) also requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. No related litigation exists here.

Rule 23(b)(3)(C) further requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Here, concentration of claims is in fact desirable

because the Defendant's facility – where all class members worked – is located in this district and division.

Finally, Rule 23(b)(3)(D) asks court to consider any "likely difficulties in managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  As noted in *Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), this requirement is satisfied automatically when a case is certified for settlement purposes.

**Ascertainability: "**Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."  *Young*, 693 F.3d at 537-38 (internal citations omitted). Here, the ascertainability requirement is satisfied because Class Members are objectively identified through Defendant's payroll and management software and systems.

### C.      The Service Awards are Proper and Reasonable

A reasonable service award is "common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*26 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at \*18). *Accord Osman*, 2018 U.S. Dist. LEXIS 78222, at \*5-6 (approving $7,500 service award to named plaintiff); *Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at \*4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at \*26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff).

In the present case, the modest service awards to Michael Brown and Tomah Nelson are amply justified by their assistance to Class Counsel and their contribution to achieving the Settlement on behalf of all Class Members. Indeed, the Named Plaintiffs incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others" and "spent a good deal of time and effort in this case," by, among other things, providing analysis to Counsel and advising Counsel as to settlement and prosecution of the action. Among other things, Plaintiffs Michael Brown and Tomah Nelson consulted with Class Counsel at critical stages; Plaintiff Michael Brown attended the September 13, 2021 Zoom Mediation at Class Counsel's office; helped counsel prepare Plaintiffs' comprehensive mediation statement and settlement demand; and provided and reviewed other important documents and information throughout the course of the litigation. Furthermore, Plaintiffs Michael Brown and Tomah Nelson faithfully represented the interests of all Class Members and ably assisted Class Counsel. Their contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed modest service awards of $2,000 each are reasonable and well-earned.

### D.        The Proposed Notice Should Be Approved – Rule 23(c)(2)(B)

In order to protect the rights of absent members of a Settlement Class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-175, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Amended Fed. R. Civ. P. 23(c)(2)(B) specifically provides that "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances…" Such a notice should define the class, describe clearly the options open to the Class Members and deadlines for taking action, describe the terms of the proposed settlement,

disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the Class Members to calculate individual recoveries, and prominently display the address and telephone number of Class Counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312. *See* Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Here, each Class Member will receive notice so that all putative Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against the Defendant in this action.

The Proposed Notice of Class Action Settlement and Fairness Hearing (the "Notice"), attached as Exhibit C, should be approved. The proposed Notice gives Class Members a reasonable period of 60 calendar days after the mailing date to opt out of the Settlement Class or object to the Settlement. The Notice defines the class, describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments, clearly describes the options open to the Class Members and deadlines for taking action, describes the terms of the proposed settlement, discloses benefits provided to the class representatives, provides information regarding attorney's fees, indicates the time and place of the fairness hearing, explains the procedure for distributing settlement funds, informs Class Members how to object to the Settlement or request exclusion from the Class if they so choose, provides each Class Member's individual recoveries, and prominently displays the address and telephone number of Class Counsel and the procedure for making inquiries. The Notice is written in plain and understandable language. The Parties request approval of the Notice as drafted. If approved, the Notice will be sent to potential Class Members by "United States mail."

Rule 23(c)(2)(B). In sum, the Notice constitutes the "best notice that is practicable under the circumstances," and, therefore, should be approved.

### E. The Court Should Appoint SCOTT & WINTERS LAW FIRM as Interim Class Counsel.

Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Following notice, at the final approval stage, interim Class Counsel may seek to be appointed class counsel. Rule 23(g)(1). Here, SCOTT & WINTERS respectfully requests the Court to appoint them as interim Class Counsel. As outlined in Counsel's Declaration, proposed Class Counsel are highly experienced lawyers handling class actions, other complex litigation, and the types of wage and hour claims asserted in the action. Class Counsel have completed substantial amounts of work in identifying and investigating the claims in this case, have extensive experience litigating hybrid class/collective wage-and-hour cases and substantial knowledge of the applicable law, and have demonstrated a willingness to commit the necessary resources to prosecute the claims of the Rule 23 Class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Scott & Winters Law Firm, LLC are competent and experienced in class and collective wage-and-hour litigation. This experience includes prosecuting claims under the FLSA and state law, being appointed as class counsel to represent classes of employees, and successfully resolving the claims of thousands of workers. (*See generally* Ex. D, Declaration of Counsel.)

## V. CONCLUSION

For the reasons addressed above, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit B.

Respectfully submitted,

*/s Ryan A. Winters*

Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs*

*/s Kimberly L. Hall (via email consent)*

Eric T. Michener (S.Ct. #0074559)
Kimberly L. Hall (S.Ct. #0090677)
CRITCHFIELD, CRITCHFIELD & JOHNSTON,
LTD.
225 North Market Street; P.O. Box 599
Wooster, Ohio 44691
Phone: (330) 264-4444
Fax: (330) 263-9278
E-mail:  michener@ccj.com; khall@ccj.com

*Attorneys for Defendant*

## CERTIFICATION OF COMPLIANCE

The undersigned hereby certifies that the above Memorandum in Support complies with the October 4, 2021 Order allowing this document to exceed the page limitations set forth in Local Rule 7.1(f).

*/s Ryan A. Winters*
Ryan A. Winters (0086917)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s Ryan A. Winters*
Ryan A. Winters (0086917)