UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BROWN, *et al.*, | ) | CASE NO. 5:20-cv-02535 |
| | ) | |
| *On behalf of themselves and all others similarly situated,* | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiff, | ) | **EXHIBIT A (TO JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT)** |
| | ) | |
| *v.* | ) | |
| | ) | |
| SPEED NORTH AMERICA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS/COLLECTIVE ACTION SETTLEMENT AGREEMENT

**WHEREAS**, on November 10, 2020, Plaintiff Michael Brown commenced this action (ECF #1) against Defendant Speed North America, Inc. (hereinafter, "Speed NA"), and on May 21, 2021, Plaintiffs Michael Brown and Tomah Nelson filed a Second Amended Class and Collective Action Complaint (ECF #25, "Second Amended Complaint") seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.*; and

**WHEREAS**, Speed NA vigorously denies any wrongdoing with respect to the subject matter of this lawsuit; and

**WHEREAS**, uncertainty exists as to Speed NA's potential liability, if any, and the nature and amount, if any, of damages owed to Plaintiffs and the purported class/collective; and

**WHEREAS**, Plaintiffs and their lawyers have determined, based upon all the facts and circumstances underlying this litigation, that the settlement described herein is fair, reasonable, and equitable; and

**WHEREAS**, Speed NA, while continuing to deny any liability or wrongdoing, desires to resolve this lawsuit in order to avoid further litigation risks and delays and to avoid future expense, inconvenience, and interference with its ongoing business operations; and

**WHEREAS**, this settlement reflects a compromise reached after arms-length bargaining through third-party mediator Jerome F. Weiss during an all-day mediation on September 13, 2021 and shall not be construed as an admission or concession by any Party as to the truth or validity of any substantive or procedural allegation, claim, or defense asserted in this or any other action or proceeding; and

**WHEREAS**, this Agreement is subject to and conditioned upon final approval by the Court and the other conditions specified herein;

**NOW, THEREFORE**, it is hereby **STIPULATED** and **AGREED** by and between the undersigned Parties that the Action is settled, subject to the Court's approval, pursuant to the following terms and conditions:

1.    **Definitions.**

**"Action"** means the above-captioned litigation.

**"Administrator"** means Settlement Services Inc., 2032D Thomasville Road, Tallahassee, Florida 32308.

**"Agreement"** means this Class/Collective Action Settlement Agreement, inclusive of all attachments.

**"Class Counsel"** means SCOTT & WINTERS LAW FIRM, LLC (The Caxton Building, 812 Huron Rd. E., Suite 490, Cleveland, OH 44115).

**"Class/Collective Members"** means all Rule 23 Class Members and all FLSA Collective Action Members.

**"Court"** means the United States District Court for the Northern District of Ohio.

**"Defendant"** means Speed NA and all its past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as its past, present, and future owners, officers, directors, agents, successors, administrators, executors, partners, and assigns.

**"Defense Counsel"** means CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD. (225 North Market Street, Wooster, Ohio 44691).

**"Effective Date"** means the date all of the following have occurred: (1) the Court has entered an order and judgment granting final approval and dismissing the Action with prejudice and (2) the judgment has become "Final." "Final" means the later of: (a) the expiration of the time for seeking rehearing, reconsideration, and/or appeal (including any extension of time for appeal) without any such actions being taken, or (b) if rehearing, reconsideration, appellate review and/or extension of time for seeking appellate review is sought, 30 days after any and all avenues of rehearing, reconsideration, appellate review, and/or extension of time have been exhausted.

**"Final Approval Date"** means the date on which the Court enters the Final Approval Order.

**"Final Approval Order"** means the order entered by the Court approving the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(2) and dismissing the Action with prejudice.

**"FLSA Collective Action Members"** means all persons who have given timely consent in writing to become a party Plaintiff in the above-captioned action and whose opt-in consent form is filed in this matter.

**"Net Settlement Fund"** means $311,500.00 minus any Court-approved payments to Class Counsel and Plaintiffs for the attorney's fees, litigation expenses, administration expenses, and service award pursuant to Paragraphs 9-11. If the Court approves all requested payments to Class

Counsel, the administrator for settlement administration, and Plaintiffs Brown's and Nelson's service awards, the Net Settlement Fund will be $182,205.00.

"**Notice Form**" means the form attached as Exhibit A.

"**Parties**" mean Plaintiffs and Defendant.

"**Plaintiffs**" mean Michael Brown and Tomah Nelson.

"**Preliminary Approval Date**" means the date on which the Court enters the anticipated order preliminarily approving the Settlement and authorizing distribution of the Notice Form to the Class/Collective Members pursuant to Federal Rule of Civil Procedure 23(e)(1).

"**QSF**" means the Qualified Settlement Fund established by the Administrator and funded by the Defendant for the purpose of holding the Net Settlement Fund and distributing all approved amounts to the proper individuals and parties. The QSF will be established and controlled by the Administrator in accordance with and pursuant to Treasure Regulation § 1.468B-1, et seq., and subject to the terms of this Agreement and the Court's orders regarding Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

"**Released FLSA Collective Action Member Claims**" means all claims, obligations, causes of action, actions, demands, rights, and liabilities, asserted or unasserted, whether anticipated or unanticipated, arising from November 10, 2017 to the Final Approval Date under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.*, or any other federal or Ohio statute or regulation for overtime compensation, other wages, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.

"**Released Rule 23 Class Member Claims**" means all claims, obligations, causes of action, actions, demands, rights, and liabilities, asserted or unasserted, whether anticipated or

unanticipated, arising from November 10, 2018 to the Final Approval Date under the Ohio

Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.*, or any other Ohio

statute, constitutional provision, or regulation for overtime compensation, other wages, penalties,

liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and

equitable relief.

**"Released Parties"** means Speed NA and all its past, present, or future parents,

subsidiaries, affiliates or related companies, successors, and predecessors, as well as its past,

present, and future owners, officers, directors, agents, successors, administrators, executors,

partners, and assigns.

**"Rule 23 Class Members"** means Plaintiffs, FLSA Collective Action Members, and all

present and former hourly employees of Defendant Speed North America, Inc. during the period

of November 10, 2018 to September 13, 2021 who do not exclude themselves from the Settlement

pursuant to Paragraph 6 of this Agreement and who, during one or more workweeks when they

worked more than forty (40) hours, were paid allegedly nondiscretionary bonuses including, but

not limited to, in the form of shift differential, attendance, and "lead pay," that were not factored

into their overtime pay; and/or who, during one or more workweeks when they worked more than

forty (40) hours, were allegedly not paid for all hours worked by virtue of having their time edited

or otherwise rounded or modified.

**"Settlement"** means the terms, conditions, and obligations described in this Agreement.

**"Settlement Percentage"** means: [**(a)** **(1)** for each Rule 23 Class Member that is not also

an FLSA Collective Action Member, his/her/their weeks of employment from November 10, 2018

to September 13, 2021, **(2)** for each FLSA Collective Action Member, his/her/their weeks of

employment from November 10, 2017 to September 13, 2021 **times two**]; [**(b)** ***divided by*** **(1)** all

Rule 23 Class Members who are also not an FLSA Collective Action Member's weeks of employment from November 10, 2018 to September 13, 2021, *plus* (2) each FLSA Collective Action Member's weeks of employment from November 10, 2017 to September 13, 2021].

"**Settlement Share**" means, for each Rule 23 Class Member (including all FLSA Collective Action Members): (a) $50.00 *plus* (b) {his/her/their Settlement Percentage} *multiplied by* {[Net Settlement Fund] *minus* [(Number of Class/Collective Members) *multiplied by* ($50.00)]}.

2.      <u>Conditions Precedent</u>. This Settlement is conditioned on the Court's entry of the Final Approval Order and passage of the Effective Date.

3.      <u>Maximum Settlement Amount</u>. Defendant's maximum payment under this Settlement is $311,500.00 plus any payroll taxes (such as, for example, the employer's share of federal, state and local taxes, worker's compensation insurance, unemployment insurance, or the employer's social security contributions) ordinarily borne by Defendant as an employer pursuant to normal payroll practices. All monies owed under this Settlement will be paid to the Administrator within 14 calendar days of the Effective Date.

4.      <u>Release</u>. Upon passage of the Effective Date, all Rule 23 Class Members (on behalf of themselves and their past, present and future agents, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or predecessors) release and forever discharge the Released Parties (as defined above) from the Released Rule 23 Class Member Claims (as defined above). In addition, upon passage of the Effective Date, all FLSA Collective Action Members (on behalf of themselves and their past, present and future agents, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or predecessors) release and forever

discharge the Released Parties (as defined above) from the Released FLSA Collective Action Member Claims (as defined above).

5.  **Notice to Class/Collective Members.** Within 14 calendar days after the Preliminary Approval Date, Defense Counsel will (i) send to Class Counsel updated payroll/timekeeping data sufficient to enable Class Counsel to determine each Class/Collective Member's Settlement Share; (ii) send to Class Counsel an updated list of each Rule 23 Class Member's (that is not also an FLSA Collective Action Member) weeks of employment from November 10, 2018 to September 13, 2021; (iii) send to Class Counsel an updated list of each FLSA Collective Action Member's weeks of employment from November 10, 2017 to September 13, 2021; and (iv) send to Class Counsel and the Administrator an Excel spreadsheet containing the name and last known residential address of each Class/Collective Member. Within 35 calendar days after the Preliminary Approval Date, the Administrator will mail the Notice Form to each Class/Collective Member. If the Postal Service returns any Notice Form to the Administrator with a forwarding address, the Administrator will promptly mail the Notice Form to the forwarding address. If the Postal Service returns any package to the Administrator without a forwarding address, the Administrator will work diligently to obtain an updated address and will promptly mail the Notice Form to any updated address. The Administrator will provide Class Counsel and Defense Counsel with a sworn statement describing the notice process to be provided to the Court when the Parties seek final approval of the Settlement.

6.  **Exclusions from the Settlement.** Class/Collective Members desiring to exclude themselves from the settlement must do so in writing. Written exclusions must be mailed to the Administrator pursuant to the instructions in the Notice Form and must be postmarked within 60 calendar days after the notice to class members mailing date.

7.     **Objections to the Settlement.** Class/Collective Members desiring to object to the settlement must do so in writing. Written objections must be mailed to the Administrator pursuant to the instructions in the Notice Form and must be postmarked within 60 calendar days after the notice to class members mailing date.

8.     **Payments to Class/Collective Members**. The Administrator will serve as the "administrator" of the Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-2(k)(3). Within 25 calendar days after the Effective Date, the Administrator will (1) mail to each Rule 23 Class Member that is not also an FLSA Collective Action Member one check from the QSF in the gross amount of his/her/their Settlement Share less all applicable payroll taxes and withholdings ordinarily born by employees,[1] and (2) mail to each FLSA Collective Action Member two checks from the QSF in the gross amount of his/her/their Settlement Share as follows: (a) one check comprising of fifty percent (one-half) of the gross amount of his/her/their Settlement Share less all applicable payroll taxes and withholdings ordinarily born by employees ("wage damages"), and (b) one check comprising of fifty percent (one-half) of the gross amount of his/her/their Settlement Share ("liquidated damages") with no withholdings. If the Postal Service returns any envelope to the Administrator with a forwarding address, the Administrator will promptly re-mail the envelope to the forwarding address. If the Postal Service returns any envelope to the Administrator without a forwarding address, the Administrator will work diligently to obtain an updated address and promptly re-mail the check to the updated address. The Administrator is authorized to cancel and re-issue any settlement checks as it sees fit.

---

[1] In order to facilitate the Administrator's mailing of Notice Forms and issuance of settlement checks, withholding of taxes, and the issuance of tax forms, Defendant, within 7 calendar days of the Preliminary Approval Date, will send to the Administrator an Excel spreadsheet listing each Class Member's social security number based on Defendant's business records. These social security numbers must be treated by the Administrator as strictly confidential.

The Administrator will issue to each Rule 23 Class Member that is not also an FLSA Collective Action Member and who receives and cashes a settlement check an IRS Form W-2 reflecting the settlement payment.

For FLSA Collective Action Members who receive and cash a "wage damages" settlement check (comprising of fifty percent (one-half) of the gross amount of his/her/their Settlement Share), the Administrator will issue an IRS Form W-2 reflecting the "wage damages" settlement check amount paid. The Administrator will treat all "liquidated damages" payments (comprising of fifty percent (one-half) of the gross amount of his/her/their Settlement Share) to FLSA Collective Action Members as non-wage income and report them to appropriate taxing authorities on Forms 1099.

Settlement checks that remain undeliverable or uncashed 120 days after the Effective Date shall be void and the funds shall be reallocated to the Class/Collective Members who have cashed their checks based on their Settlement Percentage. The Administrator will treat all reallocation payments to the Class/Collective Members as non-wage income and report them to appropriate taxing authorities on Forms 1099. To the extent there are any reallocation payment checks to any Class/Collective Members that are unclaimed or not distributed from the reallocation, any amounts not cashed within 120 days of the Administrator's mailing of the reallocation payment checks shall be retained by Defendants.

9.     **Payment to Class Counsel.** Within 25 calendar days after the Effective Date, the Administrator will deliver to Class Counsel from the QSF a non-payroll check payable to Class Counsel in an amount approved by the Court and not to exceed $102,795.00 to compensate Class Counsel for all attorneys' fees, costs, and expenses. This Settlement is not contingent on the Court's approval of any or all of the requested fees, costs, or expenses. The Administrator will

issue to Class Counsel an IRS Form 1099 reflecting the payment described in this paragraph, in accordance with applicable law. Class Counsel represent that no other counsel have been involved in any aspect of this Action or otherwise have any claim for fees in this Action to Class Counsel's knowledge.

10. **Service Awards.** Within 25 calendar days after the Effective Date, the Administrator will deliver to Plaintiff Michael Brown from the QSF a non-payroll check payable to Plaintiff Michael Brown in an amount approved by the Court and not to exceed $2,000, and will deliver to Plaintiff Tomah Nelson from the QSF a non-payroll check payable to Plaintiff Tomah Nelson in an amount approved by the Court and not to exceed $2,000. These service awards are in addition to each of the Plaintiffs' Settlement Share. This Settlement is not contingent on the Court's approval of any or all of the requested service award. The Administrator will issue to Plaintiffs an IRS Form 1099 reflecting the service award payments described in this paragraph, in accordance with applicable law.

11. **Payment to Administrator and Administrator's Responsibilities.** From the Gross Settlement Amount, necessary costs of settlement administration in an amount not to exceed $22,500.00 will be paid to the Administrator. The Administrator is solely responsible for the creation and maintenance of the QSF, the distribution and payment of all monies owed to Plaintiffs, Class/Collective Members, and Class Counsel, and the withholding, payment, and reporting of any taxes associated with such payments, and such other claims administration duties described in, or necessary to carry out, this Agreement.

12. **Dismissal with Prejudice.** Upon final approval of this Agreement by the Court, the Action, including the Second Amended Complaint, will be dismissed with prejudice in its entirety. The Parties will request that the Court retain jurisdiction to enforce this Agreement.

13. **No Representations**. In entering into this Settlement, no Party relies on any statements, representations, or promises not described in this Agreement.

14. **Consent**. Each Party has carefully read and understands this Agreement and has received independent legal advice with respect to the Agreement.

15. **Successors**. This Agreement will inure to the benefit of and be binding upon each Party's heirs, successors, and assigns.

16. **No Assignments**. No Party has assigned or transferred, or purported to assign or transfer, to any other person or entity any rights or interests pertaining to this Action, this Settlement, or this Agreement.

17. **No Presumptions**. This Agreement constitutes a negotiated contract and is the result of negotiation among the Parties. In interpreting this Agreement, there will not be any presumption of interpretation against any Party.

18. **No Admissions**. This Agreement is the result of a compromise between the Parties for the sole purpose of resolving this matter and avoiding the time and expense of further litigation. Nothing in this Agreement constitutes an admission of liability or the propriety of class certification by any Party or Released Parties with regard to the subject matter of the Action. Nothing set forth in this Agreement, the fact of the Settlement, or any act performed or document executed pursuant to or in furtherance of the Settlement may be construed or used as an admission or evidence of the validity of any claim or allegation, or of any act, omission, liability or wrongdoing on the part of the Released Parties or as supporting certification in any action or proceeding of any kind whatsoever.

19. **Tax Liability**. Defendant, Released Parties, Defense Counsel, and Class Counsel make no representations as to the tax treatment or legal effect of the payments called for under this

Agreement, and Plaintiffs and Class/Collective Members are not relying on any statement or representation by Defendant, Released Parties, Defense Counsel or Class Counsel in this regard.

20.    **Duty to Defend**. The Parties will comply with the Agreement in good faith, will fully support the Agreement's approval and enforcement, and will defend the Agreement from any legal challenge, whether by appeal or collateral attack. If the Court disapproves the Settlement, the Parties will confer in good faith to modify the settlement terms as reasonably necessary to obtain Court approval, although Defendant will have no obligation to increase the amount of the Settlement or diminish the release.

21.    **Warranty of Authority**. Each signatory below warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party for whom he/she purports to sign.

22.    **Applicable Law**. This Agreement will be governed, enforced, and interpreted according to Ohio law, without regard to choice of law principles.

23.    **Further Actions**. Going forward, the Parties will work in good faith to prepare and execute any documents deemed reasonably necessary to consummate, evidence, or confirm the terms of this Settlement and ensure the prompt approval and administration of this Settlement.

24.    **Execution**. This Agreement may be executed in counterparts and by written or electronic signature, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: Oct 1, 2021

Michael Brown (Oct 1, 2021 14:36 EDT)
Michael Brown

Dated: Oct 1, 2021

Tomah Nelson (Oct 1, 2021 15:18 EDT)
Tomah Nelson

Dated: Oct 1, 2021

Ryan A. Winters (Oct 1, 2021 14:41 EDT)
For Class Counsel

Dated: 1 Oct 2021

For Speed North America, Inc.
Its (Title): CEO

Dated: 10-1-21

For Defense Counsel

Page **13** of **13**