UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BROWN, *et al.*, | ) | CASE NO. 5:20-cv-02535 |
| | ) | |
| *On behalf of themselves and all others similarly situated,* | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | **JOINT MOTION FOR** |
| Plaintiffs, | ) | **CERTIFICATION OF THE** |
| | ) | **SETTLEMENT CLASS, FINAL** |
| *v.* | ) | **APPROVAL OF THE CLASS ACTION** |
| | ) | **SETTLEMENT, AND OTHER** |
| SPEED NORTH AMERICA, INC. | ) | **ASSOCIATED RELIEF** |
| | ) | |
| Defendant. | ) | |

The parties respectfully and jointly move the Court to enter a final order approving, as fair, reasonable, and adequate, the settlement of this collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the settlement of Settlement Class Members' state-law claims pursuant to Fed. R. Civ. P. 23(e). In addition to the below Memorandum in Support, the parties attach the following in support of this joint motion:

Exhibit 1:     Proposed Final Order and Judgment;

Exhibit 2:     Declaration of Settlement Class Administrator
                   Settlement Services, Inc.;

Exhibit 3:     Final Class Member List; and

Exhibit 4:     Declaration of Interim Class Counsel.

The settlement requires Defendant Speed North America, Inc. to make a total settlement payment of $311,500.00 plus any payroll taxes (such as, for example, the employer's share of federal, state and local taxes, worker's compensation insurance, unemployment insurance, or the employer's social security contributions) ordinarily borne by Defendant as an employer pursuant to normal payroll practices. If approved, the settlement will be distributed as follows: (i)

$182,205.00 will be paid to the 412 class members; (ii) a $2,000 service award will be paid to each of the Representative Plaintiffs Michael Brown and Tomah Nelson (for a total of $4,000); (iii) a total of $102,795.00 ($101,287.71 in attorneys' fees (representing 32.52% of the settlement fund) and $1,507.29 in costs) will be paid to Interim Class Counsel (hereinafter "Class Counsel"); and (iv) $22,500.00 will be paid to Settlement Class Administrator Settlement Services, Inc. as necessary costs of settlement administration.

Points and authorities supporting approval of the settlement were submitted in the parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF #38) ("Preliminary Approval Motion") which was adopted by the Court in its Order Granting Preliminary Approval of Settlement (ECF #39) ("Preliminary Approval Order"). Today's motion incorporates the earlier submissions and supplements their content. At the time of this filing, no Settlement Class Members have asserted an objection to the settlement, and no Settlement Class Members have requested exclusion from the settlement.

Respectfully submitted,

| | |
|---|---|
| /s Ryan A. Winters | /s Kimberly L. Hall (via email consent) |
| Joseph F. Scott (0029780) | Eric T. Michener (#0074559) |
| Ryan A. Winters (0086917) | Kimberly L. Hall (#0090677) |
| Kevin M. McDermott II (0090455) | CRITCHFIELD, CRITCHFIELD & JOHNSTON, |
| SCOTT & WINTERS LAW FIRM, LLC | LTD. |
| The Caxton Building | 225 North Market Street; P.O. Box 599 |
| 812 Huron Rd. E., Suite 490 | Wooster, Ohio 44691 |
| Cleveland, OH 44115 | Phone: (330) 264-4444 |
| P: (216) 912-2221   F: (216) 350-6313 | Fax: (330) 263-9278 |
| jscott@ohiowagelawyers.com | E-mail:  michener@ccj.com; khall@ccj.com |
| rwinters@ohiowagelawyers.com | |
| kmcdermott@ohiowagelawyers.com | *Attorneys for Defendant* |
| | |
| *Attorneys for Plaintiffs and Interim Class Counsel* | |

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................................... iv

Memorandum in Support ......................................................................................1

I.       Introduction ...........................................................................................1

II.      Background and Summary of the Claims and the Terms of Settlement.............................2

III.     Preliminary Approval of the Class/Collective Settlement .................................................5

IV.      The Court-Approved Notice Process ......................................................5

V.       Argument ...............................................................................................5

         A.      Settlement of the FLSA Claims ...................................................6

         B.      Settlement of the State Law Claims .............................................6

         C.      The Results of the Notice Process Favor Approval .....................7

         D.      The Requested Attorney Fee and Litigation Costs Reimbursement
                 Should be Approved ....................................................................9

                 1.      The *Ramey* Six-Factor Test Supports the
                         Reasonableness of a Fee Award. ...................................10

                 2.      A Lodestar Cross-Check Supports the
                         Reasonableness of the Requested Fee............................14

                         a.      Class Counsels' Hourly Rates are
                                 Reasonable ........................................................15

                         b.      Class Counsels' Hours Expended are
                                 Reasonable ........................................................17

                         c.      The Costs Expended by Class Counsel were
                                 Both Reasonable and Necessary ........................20

VI.      Conclusion ...........................................................................................20

Certificate of Service .........................................................................................22

Certificate of Compliance with Page Limitation Requirements.......................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343 (6th Cir.2000) .......................................... 15

*Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657
 (Mar. 26, 2019) ...................................................................................................... 9, 10, 11, 13

*Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 (S.D.N.Y.2013) ...................................................... 13

*Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) .................................... 15

*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir.1996) ................................................................... 14

*Carr v. Bob Evans Farms,* N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221
 (July 27, 2018) ...................................................................................................................... 16

*Castillo v. Morales, Inc.,* S.D.Ohio No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936
 (Dec. 22, 2015) ...................................................................................................................... 14

*Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008
 (S.D.Ohio Jan.26, 2011) ......................................................................................................... 9

*Dillow v. Home Care Network, Inc.,* No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579,
 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ......................................................................... 15

*Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist.
 LEXIS 20446 (Mar. 8, 2010) ........................................................................................... 10, 11

*Feiertag v. DDP Holdings, LLC,* S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS
 122297 (Sep. 9, 2016) ........................................................................................................... 14

*Ganci v. MBF Insp. Servs.,* S.D.Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645
 (Dec. 3, 2019) ....................................................................................................................... 15

*Gascho v. Global Fitness Holdings, LLC,* 822 F.3d 269 (6th Cir.2016) ...................................... 14

*Geier v. Sundquist,* 372 F.3d 784 (6th Cir.2004) ....................................................................... 15

*Gentrup v. Renovo Servs., LLC,* 2011 U.S. Dist. LEXIS 67887 (S.D. Ohio, June 24,
 2011) ..................................................................................................................................... 11

*Hurt v. Commerce Energy, Inc.,* N.D.Ohio No. 1:12-cv-758, 2018 U.S. Dist. LEXIS
 168134 (Sep. 28, 2018) .......................................................................................................... 16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation,* N.D.Ohio No.
 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467 (Sep. 23, 2016) ....................... 7

*Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D. Ohio Jan. 26, 2017) ............................................................................................ 6

*Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ............................................. 15

*Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145 (Dec. 9, 2019) ................................................................ 20

*Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012) ............................................................................................................................. 6

*Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................. 9

*Lowther v. AK Steel Corp., S.D.Ohio No. 1:11-cv-877,* 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131 (Dec. 21, 2012) .................................................................. 12, 15

*Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243 (Aug. 17, 2021) ............................................................................... 13

*Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D. Ohio May 4, 2018) ............................................................................... 6, 15

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ........................................... 10

*Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993) .................................. 9, 14

*Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (Apr. 30, 2018) ........ 19

*Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09–CV–1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) .............................................................................................. 9

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450 (July 11, 2014) .................................................................................................... 9, 12, 14

*Thorn v. Bob Evans Farms, Inc.*, No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 814044 (S.D. Ohio Feb. 26, 2016) ..................................................................... 14

*Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ...................................................................... 20

*Wright v. Premier Courier, Inc.*, S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019 (Aug. 17, 2018) ..................................................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... passim

Fed. R. Civ. P. 26 ....................................................................................................................... 17

**Statutes**

29 U.S.C. § 216 ............................................................................................. i, 4, 6, 20

29 U.S.C. §216 ..................................................................................................... 15

O.R.C. § 4111.01 *et seq.* .......................................................................................... 6

**Other Authorities**

*The Economics of Law Practice in Ohio in 2013* .................................................. 16, 17

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiffs Michael Brown and Tomah Nelson and Defendant Speed North America, Inc. (hereinafter also referred to as "Defendant" or "Speed NA") submit this memorandum in support of their joint motion for final approval of the settlement of this class/collective action lawsuit. The settlement requires Speed NA to make a total settlement payment of $311,500.00. If approved, the settlement will be distributed as follows: (i) $182,205.00 will be paid to 412 class members; notably, no class members have requested exclusion from the settlement; (ii) a $2,000 service award will be paid to each of the Representative Plaintiffs Michael Brown and Tomah Nelson (ECF #38-1, Class/Collective Action Settlement Agreement ("Settlement Agreement") at ¶ 10); (iii) $102,795.00 (representing $101,287.71 in attorneys' fees (approximately 32.52% of the settlement fund) and $1,507.29 in costs) will be paid to Class Counsel (*see id.* at ¶ 9); and (iv) $22,500.00 will be paid to Settlement Class Administrator Settlement Services, Inc. as necessary costs of settlement administration, which includes all expenses that will be paid to the third-party settlement administrator for the settlement administration of this action (*see id.* at ¶ 11).

On October 21, 2022, the Court entered an order preliminarily approving the settlement, authorizing the issuance of notice to the class members, and appointing Scott & Winters Law Firm to serve as Interim Class Counsel.  (*See* ECF #39, Preliminary Approval Order.) The notice process is now complete.  No class members object to the settlement, and no class members have requested to be excluded from the settlement.

This settlement is ripe for final approval.  In anticipation of the February 24, 2022 fairness hearing, the parties file this motion and ask the Court to enter an order:

1

- Certifying, pursuant to Fed. Rs. Civ. P. 23(a) and 23(b)(3), a settlement class consisting of Plaintiffs Brown and Nelson and 410 other individuals (412 total) who worked for Speed NA during the period of November 10, 2018 to September 13, 2021 and who, during one or more workweeks when they worked more than forty (40) hours, were paid allegedly nondiscretionary bonuses including, but not limited to, in the form of shift differential, attendance, and "lead pay," that were not factored into their overtime pay; and/or who, during one or more workweeks when they worked more than forty (40) hours, were allegedly not paid for all hours worked by virtue of having their time edited or otherwise rounded or modified;

- Approving, pursuant to Fed. R. Civ. P. 23(e)(2), the settlement of this action as "fair, reasonable, and adequate;"

- Approving class members' waiver of their wage and hour claims as provided in the Settlement Agreement;

- Approving the payments of a $2,000 service award to each of the Representative Plaintiffs Michael Brown and Tomah Nelson;

- Appointing, pursuant to Fed. R. Civ. P. 23(g)(1), the law firm of Scott & Winters, LLC to serve as Class Counsel; and

- Approving, pursuant to Fed. R. Civ. P. 23(h), a payment to Class Counsel of $102,795.00 (representing $101,287.71 in attorneys' fees and $1,507.29 in costs).

A proposed Final Order and Judgment is attached as Exhibit 1 for the Court's consideration.

## II.    BACKGROUND AND SUMMARY OF THE CLAIMS AND THE TERMS OF SETTLEMENT

Plaintiff Michael Brown filed his Class and Collective Action Complaint on November 10, 2020 (ECF #1), and on May 21, 2021 Plaintiffs Brown and Tomah Nelson filed a Second Amended Class and Collective Action Complaint (ECF #25). Plaintiffs alleged that they and other similarly situated employees were not paid for all overtime worked at the correct overtime wage rate, including compensable time at the beginning and end of their shifts as a result of Defendant's alleged unlawful regular rate calculation and time modification policies, and are owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio Revised Code §§ 4111.03, 4111.10. (*See* ECF #25, Second

Amended Complaint at ¶¶ 16-36.) Defendant denied Plaintiffs' claims and asserted affirmative defenses. (*See* ECF #26, Answer to Second Amended Complaint.) After comprehensive and extensive investigations, discovery including analysis of wage-and-hour information and other data and documents comprising of over 300,000 data points from the records produced by Defendant, and contentious negotiations, the parties were able to reach a final resolution on September 13, 2021 before mediator Jerome F. Weiss.

Defendant has agreed to pay the total settlement amount of $311,500.00 which will be made in full and final settlement of: (1) the claims released by Plaintiffs and other Class Members; (2) attorneys' fees and reimbursed litigation expenses; (3) costs of administration; (4) service awards; and (5) any other obligations of Defendant under the Settlement Agreement. The Rule 23 Settlement Class consists of:

> Plaintiffs [Brown and Nelson], FLSA Collective Action Members, and all present and former hourly employees of Defendant Speed North America, Inc. during the period of November 10, 2018 to September 13, 2021 who do not exclude themselves from the Settlement pursuant to Paragraph 6 of [the Settlement] Agreement and who, during one or more workweeks when they worked more than forty (40) hours, were paid allegedly nondiscretionary bonuses including, but not limited to, in the form of shift differential, attendance, and "lead pay," that were not factored into their overtime pay; and/or who, during one or more workweeks when they worked more than forty (40) hours, were allegedly not paid for all hours worked by virtue of having their time edited or otherwise rounded or modified.

From the Gross Settlement Amount, the total sum of $182,205.00 shall be allocated to the 412 Class Members whose names are listed in the Final Class Member List attached as Exhibit 3, resulting in an approximate average gross recovery of $442.25 per Class Member. Payments to Rule 23 Class Members are based proportionally on each Class Member's respective weeks of service to Defendant Speed NA from November 10, 2018 to September 13, 2021, subject to a $50 minimum payment. (*See* ECF 38-1 at 4-6.) In addition, FLSA Collective Action Members –

3

who are also Rule 23 Class Members – who previously submitted consent forms to join this action pursuant to the FLSA, 29 U.S.C. § 216(b), will be entitled to additional liquidated damages and recover for the period of November 10, 2017 to September 13, 2021. (*Id.*)

Based on the settlement amount for the Class, Class Members will receive approximately 98% of their alleged wage damages were they to have worked an additional 10 minutes per day off the clock, or 65% of their alleged wage damages were they to have worked an additional 15 minutes per day off the clock. Inherent in the proposed distribution method in which Class Members are distributed settlement payments based proportionally on each Class Member's respective weeks of service to Speed NA during the relevant period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Plaintiffs, as members of the Settlement Class, will participate in this recovery under the same procedure applicable to other Class Members. Importantly, this is not a "claims-made" settlement. All Class Members will receive a settlement check. No class member has requested exclusion.

The proposed Settlement provides for a service award to Representative Plaintiffs Michael Brown and Tomah Nelson in the amount of $2,000 each in recognition of their assistance to Class Counsel and their contribution to achieving the Settlement on behalf of all Class Members. In addition, from the Gross Settlement Amount, Class Counsel will receive attorneys' fees and reimbursed litigation costs in the total amount of $102,795.00 (comprising of $101,287.71 in attorneys' fees and $1,507.29 in litigation expenses). (*See* ECF #38-1 at 9-10, ¶ 9.) After reductions for litigation expenses, the attorney fee recovery will equal approximately 32.52% of the settlement fund. As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued

by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* ECF #38-1 at 8-10, ¶¶ 8-9.).

## III.    PRELIMINARY APPROVAL OF THE CLASS/COLLECTIVE SETTLEMENT

On October 4, 2021, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement. (ECF #38.) On October 21, 2021, the Court entered the Preliminary Approval Order, (i) preliminarily approving the settlement; (ii) approving the class Notice form and protocols; (iii) appointing Scott & Winters Law Firm, LLC to serve as Interim Class Counsel; and (iv) scheduling a fairness hearing for February 24, 2022. (*See* ECF #39.)

## IV.    THE COURT-APPROVED NOTICE PROCESS

Per the Settlement Agreement and Preliminary Approval Order, Settlement Administrator Settlement Services, Inc. ("SSI") performed address updates and mailed the Notice forms to 412 putative class members. (*See* Ex. 2, Declaration of Settlement Administrator SSI – Director of Operations Robert Hyte ("SSI Decl.") at ¶¶ 3-6.) Various Notice forms were re-mailed pursuant to the Court-approved protocols. (*See id.* at ¶¶ 4, 6-8.)

Class members had until January 24, 2022 to object to or seek exclusion from the settlement. (*See* SSI Decl. at ¶¶ 9-10; *see also* ECF #38-1, Settlement Agreement at 7-8, ¶¶ 6-7.) No class member has objected to the settlement, and no class member has sought to be excluded from the settlement. (SSI Decl. at ¶¶ 9-10.)

## V.    ARGUMENT

This settlement covers the Named Plaintiffs and 410 other (412 total) current and former hourly employees of Speed NA who alleged that they, during one or more workweeks when they worked more than forty (40) hours, were paid allegedly nondiscretionary bonuses including, but not limited to, in the form of shift differential, attendance, and "lead pay," that were not factored

into their overtime pay; and/or who, during one or more workweeks when they worked more than forty (40) hours, were allegedly not paid for all hours worked by virtue of having their time edited or otherwise rounded or modified, and allege they are owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and Ohio Revised Code §§ 4111.03, 4111.10. (*See* ECF #38-1, Settlement Agreement at 5.) The settlement resolves wage-and-hour claims of Named Plaintiffs, FLSA Collective Action Members, and Rule 23 Class Members as provided in the Settlement Agreement. (ECF #38-1 at 2 (defining "Class/Collective Members").)

### A.     Settlement of the FLSA Claims

As to the FLSA claims governed by 29 U.S.C. § 216(b), the Court previously found that "[t]here is a 'bona fide dispute between the parties as to the employer's liability under the FLSA' and the Settlement 'is fair, reasonable, and adequate.'" (ECF #39 at ¶ 7 (citing *Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D. Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012)); *Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D. Ohio May 4, 2018) (additional citations omitted).) The Court accordingly found in its Preliminary Approval Order that "the proposed Settlement satisfies the standard for approval of a class/collective action settlement under 29 U.S.C. § 216(b) and O.R.C. § 4111.01 *et seq*." (ECF #39 at ¶ 7.)

### B.     Settlement of the State Law Claims

As to the state law Rule 23 claims, the parties' Preliminary Approval Motion made the required showing under Fed. R. Civ. P. 23. Based on that showing, the Court found that "settlement of this action under Rule 23 is **PRELIMINARILY APPROVED** because it appears

that, at the final approval stage, the Court 'will likely be able to' approve the settlement under the criteria described in Civil Rule 23(e)(2) and certify the settlement class under the criteria described in Civil Rules 23(a) and 23(b)(3). *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)." (ECF #39 at ¶ 10.) The Court appointed Plaintiffs' counsel as Interim Class Counsel (*id.* at ¶ 14), and approved the proposed "Notice of Class Action Settlement" and ordered that it "shall be sent to the 'Rule 23 Class Members' as defined in the Settlement Agreement, pursuant to such protocols" (*id.* at ¶ 11).

Thus, the Court's convening of the Fairness Hearing on February 24, 2022 will complete the notice-and-hearing process prescribed by Rule 23(e). *See* Fed. R. Civ. P. 23(e)(1-2) (a class settlement may be approved only after notice and hearing, and upon finding that it is "fair, reasonable, and adequate"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation,* N.D.Ohio No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *24-28 (Sep. 23, 2016) (granting final approval of a class settlement under Rule 23(e)).

### C.    The Results of the Notice Process Favor Approval

The results of the notice process are reported in the attached declaration from Settlement Class Administrator Settlement Services, Inc., attached as Exhibit 2 and incorporated by reference herein. Mr. Robert Hyte is Director of Operations at Settlement Services, Inc., the firm retained as Settlement Administrator. (Ex. 2, SSI Decl ¶¶ 1-2.) Mr. Hyte explains that "SSI is serving in this matter as the Administrator in the Action for the purposes of administering the Class/Collective Action Settlement Agreement preliminarily approved in the Court's Order dated October 21, 2021.  I submit this Declaration in order to provide the Court and the Parties to this Action with information regarding the dissemination of the Notice of Class Action Settlement ('Notice'), processed in accordance with the Court's Order." (*Id.* at ¶ 2.)

Pursuant to the Settlement Agreement and the Court's Order, Mr. Hyte states that "[o]n November 24, 2021 (the 'Notice Date'), SSI mailed the Notices by first-class mail, postage prepaid, from Tallahassee, Florida, to four hundred twelve (412) Class Members." (*Id.* at ¶ 5.) So as to ensure that notices were sent to putative Class Members at the most updated and accurate address available, Mr. Hyte reports that:

> **NCOA.**  In order to obtain the most current mailing address for Class Members, SSI processed the Class Lists addresses through the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"). This process updates addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS.
>
> \*\*\*
>
> **Undeliverable Mail**. As of this date, a total of eighty-one (81) original Notices have been returned to SSI by the USPS as undeliverable without forwarding address information.  SSI conducted a locator trace for the individuals with a returned Notice prior to the postmark deadline, and possible new addresses were obtained for seventy-four (74) of them.  SSI re-mailed a Notice to these possible new addresses.
>
> \*\*\*
>
> **Remail by Request**.  Three (3) Notices were re-mailed at the request of either Class Counsel or the Class Member…. **Remail to PO Forward.** Three (3) Notices were re-mailed to PO forward addresses provided by the US Postal Service.

(*Id.* at ¶¶ 4, 6-8.) Mr. Hyte further reports "[t]he deadline for Class Members to exclude themselves from the Class is a postmark deadline of January 24, 2022.  As of the date of this declaration, SSI has received no (0) timely request for exclusion." (*Id.* at ¶ 9.) In addition, "[t]he deadline for Class Members to object to the Settlement was a postmark deadline of January 24, 2022.  As of the date of this declaration, SSI has received no (0) objections, timely or otherwise." (*Id.* at ¶ 10.)

The fact that no Class Members have objected to the settlement, and that no Class Members have requested exclusion, unequivocally shows that the affected individuals support the settlement and want it to be approved.

> **D.  The Requested Attorney Fee and Litigation Costs Reimbursement Should be Approved**

Plaintiffs respectfully request approval of the attorneys' fees award and litigation costs reimbursement as provided in the Settlement Agreement in the total amount of $102,795.00. (ECF #38-1, Settlement Agreement at 9-10, ¶ 9.) After deduction for litigation costs, Plaintiffs' attorneys' fees award of $101,287.71, or 32.52% of the common settlement fund, is less than a one-third percentage of the fund award typically ordered in complex wage and hour cases. The value of the benefit rendered to the class eminently favors approval of the requested award. Sixth Circuit authority unequivocally favors approval. The requested attorney fee award and costs reimbursement should be approved for all of the following reasons.

The Sixth Circuit has approved the percentage-of-the-fund method to determine a reasonable attorney's fee. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *12-13 (Mar. 26, 2019). "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6 (citing *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09–CV–1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees) (additional citations omitted)). "In this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'" *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *14-15 (July 11, 2014) (citing *Connectivity Sys. Inc. v. Nat'l City Bank,*

9

No. 2:08–CV–1119, 2011 WL 292008, at *13 (S.D.Ohio Jan.26, 2011)); *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (percentage-of-fund is the "preferred method"). Another court within this district has noted that "[t]he percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel 'as to their expected recovery,' and encourag[es] early settlement before substantial fees and expenses have accumulated." *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *19 (Mar. 8, 2010).

      **1.    The *Ramey* Six-Factor Test Supports the Reasonableness of a Fee Award.**

Under the percentage-of-fund method, courts consider the six "*Ramey* Factors." *See Barnes*, 2019 U.S. Dist. LEXIS 65657, at *13-17 (citing and applying *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974)). In determining the reasonableness of the fee award, a court considers the following factors: (1) the value of the benefit rendered to the class (*i.e.*, the results achieved); (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey*, 508 F.2d at 1196 (citations omitted). As discussed below, each *Ramey* Factor favors approval of the requested award.

      <u>*Ramey* Factor 1 – *The Value of the Benefits Rendered to the Class*</u>**:** The recovery for the class here is substantial. The Parties deeply disputed the average or approximate number of minutes, if any, Defendant's employees worked either off the clock or worked after clocking in but prior to their shift starting time. From Plaintiffs' perspective, employees would generally clock in 10 to 15 minutes early and begin working, and their hours would be either rounded or

edited against them resulting in non-payment of compensable time worked. Conversely, from Defendant's perspective, employees generally performed no job duties and engaged in no compensable, non-*de minimis* activities prior to their shift starting time. That said, the efforts of Class Counsel resulted in proposed settlement payments to Class Members representing approximately 98% of their alleged wage damages were they to have worked an additional 10 minutes per day off the clock, or 65% of their alleged wage damages were they to have worked an additional 15 minutes per day off the clock.. As such, the settlement "provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *14.

*Ramey* **Factor 2 – Society's Interest in Rewarding the Attorneys:** This factor favors approval because "society has a stake in rewarding the efforts of attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, *14 (S.D. Ohio, June 24, 2011); *accord Barnes*, 2019 U.S. Dist. LEXIS 65657, at *14-15. Although the average recovery of $442.25 is a substantial amount, it likely would not make sense to file a lawsuit for such an amount.[1] Only through the class action devise, as utilized by competent counsel, will the employees' rights to unpaid overtime be vindicated. It is in society's interest that employees be lawfully and properly compensated for their work time.

*Ramey* **Factors 3-4 – Value of the Services Rendered, and Contingent Fee Basis:** The legal services provided in this case were undertaken on a contingency fee basis whereby Plaintiffs as class representative agreed to compensate counsel in the amount of 33 1/3% of the total amounts recovered – an amount commonly approved in wage and hour class/collective actions across the Sixth Circuit as reasonable. However, Class Counsel seeks to recover a lesser

---

[1] By way of example, the civil matter filing fee for the N.D. Ohio is currently $402.00. *See* https://www.ohnd.uscourts.gov/fee-schedule (las t accessed Feb. 14, 2022).

amount of 32.52% of the common fund after deduction for reimbursed litigation expenses, which falls below the "one-third" reasonable amount. The contingent nature of the fee agreement meant that counsel bore the risk of receiving no fee if the case was not successful and strongly supports that the requested award is reasonable – as in any wage and hour matter, there is a real potential that Defendant could win outright and leave Plaintiffs and the class with no recovery. Moreover, as further explained below, the value of the services rendered on an hourly basis (as of February 15, 2022) is $84,455.00, a lodestar multiplier of 1.19, which will likely fall to 0.96 – 0.85 after the addition of additional hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion, declaration and related exhibits, preparing for and participating in the Fairness Hearing, and any other work completed since February 15, 2022 and through the conclusion of this matter, including relating to finalizing this case and overseeing administration of the settlement. This multiplier is within the range of similar cases approved within the Sixth Circuit, and also favors approval. *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *17-18 (approving requested fee of $1,320,000 where cumulative lodestar amounted to $512,885, or a 2.57 multiplier "which is consistent with other risk multipliers approved in complex class actions in this Circuit") (citing *see, e.g., Lowther v. AK Steel Corp., S.D.Ohio No. 1:11-cv-877,* 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5-6 (Dec. 21, 2012) (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)).

**_Ramey_ Factor 5 – _Complexity of the Litigation_**: Fifth, "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *18 (citing *see Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 478-479 (S.D.N.Y.2013)). As observed in *Barnes,* 2019 U.S. Dist. LEXIS 65657, at *16:

12

This is particularly true [] where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

The case here was likewise complex, not only for the sheer amount of information required to be analyzed and processed in this class action, but because of the complexity of the calculations needed to be performed. Class Counsels' comprehensive investigation included an analysis of the wage-and-hour information and other data and documents comprising of over 300,000 data points from the records produced by Defendant which permitted the parties to compute a calculation of the unpaid overtime for the Named Plaintiffs and the entire putative Rule 23 Class. The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

**_Ramey_ _Factor 6 – Professional Skill and Standing of Counsel_**: Last, Class Counsel is highly experienced in wage and hour class and collective actions. The professional standing and skill of the attorneys on both sides meets a high standard, and the competency and efficient handling of this matter reflects the exemplary recovery provided to class members. *See also Wright v. Premier Courier, Inc*., S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *18-19 (Aug. 17, 2018) (approving one-third attorney fee award and noting "the hours expended and time records submitted by Class Counsel [including Scott & Winters] further underscore their competency and efficient handling of this matter, favoring approval."); *Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243, at *19 (Aug. 17, 2021) ("The professional skill and standing of the attorneys involved weighs in favor of granting Plaintiffs' counsel's requested fee award…. Plaintiff's counsel [Scott & Winters] brings substantial collective experience in litigating claims under FLSA.")

## 2.     A Lodestar Cross-Check Supports the Reasonableness of the Requested Fee

*Rawlings,* 9 F.3d at 517, held that "use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases" and "the determination of which method is appropriate in any given case will depend upon its circumstances." *Accord Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir.2016). The court has discretion to select one method over the other, or to use them in combination. *See, e.g., Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996) ("the district court based its fee award on a percentage of the common fund and then cross-checked the fee against class counsel's lodestar"); *Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016). However, a "cross-check of the attorney-fee request using Class Counsel's lodestar is optional…" *Feiertag v. DDP Holdings, LLC*, S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *21 (Sep. 9, 2016).

When applying a lodestar cross-check of a percentage-of-the-fund attorney fee award, the award is reasonable when it amounts to a multiplier of approximately 2.5. *See Castillo v. Morales, Inc.,* S.D.Ohio No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *22-23 (Dec. 22, 2015) ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."). *Swigart,* 2014 U.S. Dist. LEXIS 94450, at * 18 (approving multiplier of 2.57 in a FLSA case) (additional citations omitted); *Feiertag,* 2016 U.S. Dist. LEXIS 122297, at *21 (citing *Johnson v. Midwest Logistics Sys., Ltd*., No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013); *Ganci v. MBF Insp. Servs*., S.D.Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *18 (Dec. 3, 2019)

("Given that courts frequently approve attorney's fee awards equaling two to three times the lodestar amount, the fees sought by Class Counsel in this case are well within the reasonable range.") (citing *see Dillow v. Home Care Network, Inc.*, No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving fee award that was "approximately 2.9 times the lodestar" and noting that the multiplier "is well within the acceptable range of multipliers" for a wage and hour action); *Lowther*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a "very acceptable" 3.06 multiplier and citing cases finding multipliers ranging from 4.3 to 8.74 to be reasonable) (additional citations omitted).

### a.     Class Counsels' Hourly Rates are Reasonable

Under the lodestar method, for purposes of determining a reasonable attorneys' fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir.2000); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *8. Class Counsel Joseph F. Scott, Ryan A. Winters, and Kevin M. McDermott II each have extensive experience in complex civil wage litigation, including Fed. R. Civ. P. 23 class actions, 29 U.S.C. §216(b) collective actions, and individual wage and hour actions. (*See* ECF #38-4, Decl. of Counsel for Preliminary Approval at ¶¶ 6-14.) The applicable hourly rates for counsel in this matter are $450, $375, and $325, respectively.

In *Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *12 (July 27, 2018), a court within this district approved rates for similarly

experienced plaintiff's attorneys to those in this matter. In that case, the court found as reasonable an hourly rate of $450 for an attorney with years of practice (32 years) similar to Attorney Scott (36 years); the court further approved two other attorneys' requested hourly rates in the amounts of $395 who each had less practice and years of experience than both Winters and McDermott. [2]

Courts within this district have also cross-checked plaintiffs' counsel's requested reasonable rates with rates reported in *The Economics of Law Practice in Ohio in 2013* ("*Economics of Law*"). *Hurt v. Commerce Energy, Inc.*, N.D.Ohio No. 1:12-cv-758, 2018 U.S. Dist. LEXIS 168134, at *3 (Sep. 28, 2018) (citing Ohio State Bar Association, *The Economics of Law Practice in Ohio in 2013: A Desktop Reference* (2013) ("*Economics of Law*")[3]). In *Hurt*, a Rule 23 and FLSA matter, the court stated that the closest available category for plaintiff's counsel was that of "Trial Practice, not PI (General Civil)." *Id.* at 2018 U.S. Dist. LEXIS 168134, at *3, fn. 12. On this parameter, Class Counsels' requested rates here fall between the median and 95th percentiles. *Economics of Law* at 40. Counsel's attorney rates also fall between the median and 95th percentiles under the category of Downtown Cleveland office location, and between the 75th and 95th percentiles when averaging/blending rates for the years in practice category. *Id.* at 39. However, as noted in *Hurt*, 2018 U.S. Dist. LEXIS 168134, at *3, "the sought

---

[2] In *Carr*, the court found that an attorney, who had been practicing wage and hour law since November 2013 (Decl. at ECF #77-3 at ¶ 42, PageID #3935, *Carr v. Bob Evans Farms*, N.D. Ohio No. 1:17-CV-1875), and an attorney who had been practicing wage and hour law since at least 2015 (Decl. at ECF #77-4 at ¶ 25, PageID #3949), requested hourly rates of $395 to be reasonable. At the time of approval, the attorneys had each been licensed attorneys for approximately 5.5 years. (*Id.* at 77-3 at ¶ 41, PageID #3935; 77-4 at ¶ 23, PageID #3948.) The Court also approved an attorney with 32 years trial experience requested fee of $450 as reasonable – less than Attorney Scott's 36 years currently. (*Id.* at 77-4 at ¶ 23, PageID #3943).

[3] Available at https://www.ohiobar.org/globalassets/home/member-benefits/personal-finance/osba_econoflawpracticeohio.pdf (last accessed Feb. 15, 2022).

rates are on the high end of the spectrum. But the *Economics of Law* data is dated and attorney rates have increased since its publication. And, importantly, Plaintiffs requested fees are within the spectrum of reported rates."

**b.**     **Class Counsels' Hours Expended are Reasonable**

As of February 15, 2022, Class Counsel had a collective approximately 242.4 hours in this case – a lodestar of $84,455.00 based on the above rates. Specifically, Joseph F. Scott had approximately 27 hours at $450 per hour; Ryan A. Winters had approximately 46 hours at $375 per hour; and Kevin M. McDermott II had approximately 169.4 hours at $325 per hour. (Ex. 4, Class Counsel Decl. at ¶ 15.) Class Counsels' multiplier as of February 15, 2022 was 1.19, substantially less than the 2.5 multiplier routinely approved in similar wage and hour cases referenced above that were found as reasonable.

The tasks required of Class Counsel in this case included pre-litigation investigation of Plaintiffs' and other Class Members' claims; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; and investigation of current and former employees of Defendant and putative Class Members. Prior to the September 13, 2021 mediation, on July 7, 2021 Class Counsel issued informal mediation discovery requests, and on July 16, 2021 Defendant issued Defendant's informal discovery requests. Ultimately, in response, Defendant produced approximately 1175 pages of PDF documents and Microsoft Excel compatible spreadsheets containing job identification and payment information comprised of a combined approximately 300,000 data points, including payroll information for approximately 458 employees (>100%), and timekeeping records for approximately 36 employees (8%). Class Counsel both manually and electronically transcribed all relevant provided data into an electronic, aggregate computable format. Plaintiffs' computation permitted a calculation of the

17

unpaid wages for the Plaintiffs and all other members of the proposed Settlement Class based off a statistically significant sample of the total workweeks over a two-year period (as to the Rule 23 Class) and a three-year period (as to the FLSA Collective). In advance of the mediation, Plaintiffs provided a comprehensive mediation position statement and settlement demand which was provided to both defense counsel and the mediator. As directed by the Court, on August 27, 2021, the Parties filed a joint status report informing the Court of the name of the mediator selected by the Parties (Jerome F. Weiss, Esq.) and the agreed upon date for conducting the mediation. (ECF #34.) In addition, on September 10, 2021, Class Counsel provided responses to the informal discovery requests submitted by Defendant for mediation purposes. Class Counsels' comprehensive investigation included an analysis of the wage-and-hour information and other data and documents comprising of hundreds of thousands of data points from the records produced by Defendant which permitted the parties to compute a calculation of the alleged unpaid overtime for the Named Plaintiffs and the FLSA collective and putative Rule 23 Class. The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Moreover, Class Counsels' lodestar has not been adjusted to account for the time Class Counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, responding to questions and inquiries from the hourly employees of Defendant who comprise of the settlement class, and continuing representation of Plaintiffs and class members through the conclusion of this matter and disbursement of settlement proceeds. Class Counsel have extensive experience in these matters, and are well familiar with the many additional tasks that Counsel will dutifully complete through this matter's conclusion. The timeline for settlement administration established by the parties' agreement will

18

require the settlement administration to last a minimum of six months. Based upon prior settlements of similar size, Counsel anticipates expending on average an additional two (2) to eight (8) hours each month for several months in settlement administration. Once settlement checks are sent to all class members, Class Counsel will almost certainly receive many telephone calls, text messages and emails from class members regarding the case. Class participants routinely contact Counsel for questions regarding the exact nature of the litigation, the effect of settlement, the precise calculation methodology for their individual awards, and the anticipated timeline for receiving a payment. (*See* ECF #38-1, Settlement Agreement at 8-10, ¶¶ 8-11.) Moreover, with a class of this size, there will inevitably be uncashed checks. The demands on Class Counsel in administering a settlement of this size is of no small undertaking.

Class Counsels' lodestar also does not include the approximately 20 additional hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion, declaration and related exhibits, preparing for and participating in the Fairness Hearing, and any other work completed since February 15, 2022. Class Counsel therefore expects that the total attorney hours expended at the conclusion of this matter will be approximately 274.4 - 310.4 hours, a blended lodestar amount (based upon an average rate of $383.33) of $105,186.67- $118,986.67, or a multiplier of 0.96 – 0.85.

The fact that Class Counsel's final lodestar will likely result in a 'negative multiplier' eminently supports that the fee sought is reasonable. *See, e.g, Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A*., Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at *18 (W.D. Ky. Oct. 13, 2016)); *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019).

**c.      The Costs Expended by Class Counsel were Both Reasonable and Necessary**

Class Counsel also maintain records regarding costs expended on each case. Class Counsel has incurred, and will incur through administration of this matter, reimbursable out-of-pocket expenses in this case in the amount of $1,507.29. These costs and expenses consist of the case filing fee, service of the complaint, printing and mailing services for the 29 U.S.C. § 216(b) conditional certification mailing, and postage for documents sent to the mediator in the total amount of $1,507.29. In addition, the settlement includes a payment to settlement administrator SSI for costs of administration in the amount of $22,500.00. (ECF #38-1, Settlement Agreement at 10, ¶ 11; *see* Ex. 2, SSI Decl. at ¶ 11.) These expenses constitute costs that were reasonably necessary to prosecute and finalize the action and administrate the settlement.

**VI.      CONCLUSION**

For the reasons addressed herein and in the Preliminary Approval Motion, the parties respectfully ask the Court to approve this Settlement and enter the proposed Final Order and Judgment attached as Exhibit 1, which incorporates the Final Class Member List attached as Exhibit 3.

Respectfully submitted,

| | |
|---|---|
| */s Ryan A. Winters* | */s Kimberly L. Hall (via email consent)* |
| Joseph F. Scott (0029780) | Eric T. Michener (#0074559) |
| Ryan A. Winters (0086917) | Kimberly L. Hall (#0090677) |
| Kevin M. McDermott II (0090455) | Critchfield, Critchfield & Johnston, Ltd. |
| Scott & Winters Law Firm, LLC | 225 North Market Street; P.O. Box 599 |
| The Caxton Building | Wooster, Ohio 44691 |
| 812 Huron Rd. E., Suite 490 | Phone: (330) 264-4444 |
| Cleveland, OH 44115 | Fax: (330) 263-9278 |
| P: (216) 912-2221   F: (216) 350-6313 | E-mail:  michener@ccj.com; khall@ccj.com |
| jscott@ohiowagelawyers.com | |
| rwinters@ohiowagelawyers.com | *Attorneys for Defendant* |
| kmcdermott@ohiowagelawyers.com | |

*Attorneys for Plaintiffs and Interim Class
Counsel*

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s Ryan A. Winters*
Ryan A. Winters (0086917)

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS

I, undersigned counsel, state that this matter has been assigned to the standard track, and I hereby certify that the memorandum contained herein complies with the page limitations established by Local Rule 7.1(f) as a dispositive motion "which, if granted, would result in the entry of judgment or dismissal, or would dispose of any claims or defenses, or would terminate the litigation." *See* L.R. 16.1(b)(5).

*/s Ryan A. Winters*
Ryan A. Winters (0086917)